**STATE v. TINNEY**

[229 N.C. App. 616 (2013)]

STATE OF NORTH CAROLINA
v.
ANDREW TINNEY

No. COA13-209

Filed 17 September 2013

1.  **Appeal and Error—transfer of juvenile case to superior court—no right of appeal—guilty plea**

    The trial court did not err in an attempted murder, secret assault, and assault with a deadly weapon upon a governmental officer case by concluding that defendant had no statutory right to appeal the allowance of an order transferring his case from juvenile court to the superior court based on his guilty plea. In light of the steps taken by the trial court to advise defendant of the likelihood that his attempt to reserve his right to seek appellate review of the transfer order would prove unsuccessful, defendant is not entitled to relief from the trial court's judgment on the basis of this contention.

2.  **Constitutional Law—effective assistance of counsel—failure to advise about consequences of guilty plea—no prejudice**

    Defendant did not receive ineffective assistance of counsel in an attempted murder, secret assault, and assault with a deadly weapon upon a governmental officer case based on trial counsel allegedly failing to advise him that the Court of Appeals would refuse to consider his challenge to the transfer order in the event that he persisted in pleading guilty. Defendant made that decision with full knowledge of the virtually nonexistent likelihood that his attempt to reserve the right to seek appellate review of the transfer order would prove successful. Further, defendant cannot make the necessary showing of prejudice.

Review pursuant to the issuance of a writ of *certiorari* of judgment entered 29 October 2012 by Judge Eric L. Levinson in Moore County Superior Court. Heard in the Court of Appeals 4 June 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*N.C. Prisoner Legal Services, Inc., by Allison Standard, for Defendant.*

ERVIN, Judge.

**STATE v. TINNEY**

[229 N.C. App. 616 (2013)]

Defendant Andrew Tinney appeals from a judgment sentencing him to a term of 100 to 129 months imprisonment based upon his convictions for attempted murder, secret assault, and assault with a deadly weapon upon a governmental officer. On appeal, Defendant argues that the trial court's judgment should be vacated on the grounds that he was precluded from obtaining the benefit of the bargain inherent in his plea agreement and that, in the alternative, his guilty plea resulted from deficient representation on the part of his trial counsel. After careful consideration of Defendant's challenges to the trial court's judgment in light of the record and the applicable law, we find no justification for disturbing the trial court's judgment.

## I. Factual Background

### A. Substantive Facts

At the time of the incident which led to the institution of the charges for which he has been convicted and sentenced, Defendant was a fifteen-year-old ninth grader at Union Pines High School. On 18 October 2011, Defendant emerged from a school restroom with a knife concealed beneath his shirt; walked up behind Officer Steven Clark, a resource officer at the school; and stabbed him in the back three times. With the assistance of the wrestling coach, Officer Clark was able to take the knife away from Defendant and handcuff him. As a result of the fact that he was wearing a bulletproof vest, Officer Clark was not seriously injured. When Defendant was being put into Officer Clark's patrol car, he stated, "Damn, I did not know you were wearing a bullet proof vest."

After being transported to the detention center and being advised of his rights against compulsory self-incrimination, Defendant admitted having planned his attack upon Officer Clark as part of what appeared to have been an apparent attempt to either be killed by police or incarcerated in view of the fact that a lengthy prison sentence had recently been imposed upon his father. Prior to the incident, Defendant told his family, among other things, that he loved them and would miss them, and told a friend that he was going to do something bad at school. Subsequently, investigating officers found a letter which Defendant had written to his father in which Defendant stated:

> Hey, daddy, I love you and I always will. Don't ever forget that. You and Grandma raised me right. My mistakes are my fault, not y'all's. When you get this letter you will know what happened. I don't deserve you, Grandma, because I'm worthless, but I still love you all and always will. Love, Andrew.

## B. Procedural Facts

A petition alleging that Defendant should be adjudicated a delinquent juvenile on the grounds that he had assaulted a governmental officer with a deadly weapon was filed on 18 October 2011. On 10 January 2012, Judge Lee Gavin entered an order transferring the case against Defendant to the Moore County Superior Court "for trial as in the case of an adult" for committing misdemeanor injury to school property, having a weapon on school property, assault with a deadly weapon on a government official, and assault with a deadly weapon with the intent to kill on the grounds that "the juvenile is an extreme risk to commit homicide," that "the attack by the juvenile was planned and dangerously carried out," and that "the juvenile needs long term supervised treatment that would not be available beyond his 19th birthday which is the limit of the juvenile jurisdiction of this court." On 14 June 2012, Judge William R. Pittman entered an order affirming Judge Gavin's order and allowing the transfer of Defendant's case to the Moore County Superior Court.

On 9 July 2012, the Moore County grand jury returned bills of indictment charging Defendant with attempted murder, assault with a deadly weapon with the intent to kill, assault on a government official with a deadly weapon, secret assault, possession of a weapon on school property, and injury to personal property. On 29 October 2012, Defendant tendered a plea of guilty to the offenses of attempted murder, assault on a governmental official with a deadly weapon, and secret assault subject to an agreement that the State would voluntarily dismiss the possession of a weapon on school property, injury to personal property, and assault with a deadly weapon with the intent to kill charges; that the attempted murder, assault on a governmental official with a deadly weapon, and secret assault charges would be consolidated for judgment; and that Defendant would be sentenced in the mitigated range, with Defendant "[p]reserving [the] right to appeal [t]ransfer to Superior [Court] of [j]uvenile case." As will be discussed in more detail in the course of our opinion, the trial court added, "(But see discussion on the record regarding this and S. v. Moore, S. v. Evans)" during the course of a hearing held for the purpose of evaluating the validity of Defendant's guilty plea. At the conclusion of the plea hearing, the trial court accepted Defendant's guilty plea; consolidated for judgment Defendant's convictions for attempted murder, secret assault, and assault on a governmental official with a deadly weapon; and sentenced Defendant to a term of 100 to 129 months imprisonment. Defendant noted an appeal to this Court from the trial court's judgment.

On 15 March 2013, the State filed a motion to dismiss Defendant's appeal. On 20 March 2013, Defendant filed a petition seeking the issuance of a writ of *certiorari* for the purpose of permitting review of the trial court's judgment. On 2 April 2013, this Court entered an order allowing the State's dismissal motion. This Court granted Defendant's *certiorari* petition on 5 April 2013. As a result, Defendant's challenges to the trial court's judgment are properly before us.

## II. Legal Analysis

### A. Validity of Defendant's Guilty Plea

[1] In his initial challenge to the trial court's judgment, Defendant contends that the fact that the order transferring the case against him from District Court to Superior Court was not appealable in light of his decision to enter a guilty plea and the fact that his guilty plea was tendered on the understanding that he would be able to seek appellate review of the transfer order requires us to vacate the trial court's judgment and to allow Defendant the opportunity to withdraw his plea and either go to trial or seek to negotiate a new plea agreement. In support of this assertion, Defendant argues that, in the event that a defendant pleads guilty to committing a criminal offense in return for certain promises, he or she has the right to withdraw his guilty plea in the event that he or she cannot obtain the benefit of the bargain embodied in the plea agreement. We do not find this argument convincing.

### 1. Appealability of the Transfer Order

"In North Carolina, a defendant's right to appeal in a criminal proceeding is purely a creation of state statute." *State v. Pimental*, 153 N.C. App. 69, 72, 568 S.E.2d 867, 869, *disc. review denied*, 356 N.C. 442, 573 S.E.2d 163 (2002).

> A defendant who pleads guilty has a right of appeal limited to the following:
>
> 1. Whether the sentence "is supported by the evidence." This issue is appealable only if his minimum term of imprisonment does not fall within the presumptive range. N.C. Gen. Stat. § 15A-1444(a1) (2001);
>
> 2. Whether the sentence "[r]esults from an incorrect finding of the defendant's prior record level under G.S. 15A-1340.14 or the defendant's prior conviction level under G.S. 15A-1340.21." N.C. Gen. Stat. § 15A-1444(a2)(1) (2001);

3. Whether the sentence "[c]ontains a type of sentence disposition that is not authorized by G.S. 15A-1340.17 or G.S. 15A-1340.23 for the defendant's class of offense and prior record or conviction level." N.C. Gen. Stat. § 15A-1444(a2)(2) (2001);

4. Whether the sentence "[c]ontains a term of imprisonment that is for a duration not authorized by G.S. 15A-1340.17 or G.S. 15A-1340.23 for the defendant's class of offense and prior record or conviction level." N.C. Gen. Stat. § 15A-1444(a2)(3) (2001);

5. Whether the trial court improperly denied defendant's motion to suppress. N.C. Gen. Stat. §§ 15A-979(b)(2001), 15A-1444(e) (2001);

6. Whether the trial court improperly denied defendant's motion to withdraw his guilty plea. N.C. Gen. Stat. § 15A-1444(e).

*State v. Jamerson*, 161 N.C. App. 527, 528-29, 588 S.E.2d 545, 546-47 (2003) (alterations in original). In *State v. Evans*, 184 N.C. App. 736, 738-39, 646 S.E.2d 859, 860 (2007), this Court specifically addressed a situation in which the defendant pled "guilty . . . to second-degree murder and assault with a deadly weapon with intent to kill" while "attempt[ing] to preserve the right to appeal issues related to his transfer from District Court to Superior Court for trial as an adult" and held that, since the defendant's "appeal following his guilty plea does not fall within any of the categories of appeal permitted under [N.C. Gen. Stat. § 15A-1444]" and since the defendant "ha[d] not petitioned for a writ of certiorari," "we lack[ed] jurisdiction to consider Defendant's appeal" and dismissed it. As a result, it is clear, in light of *Evans*, that a defendant who enters a plea of guilty has no statutory right to appeal the allowance of an order transferring his or her case from juvenile court to the Superior Court.

## 2. Adequacy of the Trial Court's Plea Colloquy

According to Defendant, the fact that his "plea agreement expressly reserve[d] the right to appeal the district court's decision to transfer him to superior court" coupled with the fact that his decision to enter a guilty plea forfeited his right to challenge the validity of the transfer order on appeal establishes that his "plea was not the product of an informed choice because he cannot get the benefit of his plea bargain." In essence, Defendant contends that the fact that the entry of his plea was conditioned on a reservation of the right to take an action that he

was precluded from taking established that he had not knowingly, voluntarily, and understandingly pled guilty to the offenses reflected in the trial court's judgment. Defendant's argument is not persuasive in light of the unusual facts present in this case.[1]

As the Supreme Court has stated:

> a plea of guilty . . . may not be considered valid unless it appears affirmatively that it was entered voluntarily and understandingly. Hence, a plea of guilty . . . unaccompanied by evidence that the plea was entered voluntarily and understandingly, and a judgment entered thereon, must be vacated . . . . If the plea is sustained, it must appear affirmatively that it was entered voluntarily and understandingly . . . [and that] the nature and consequences of the plea [had] been explained to defendant *in open court.*

*State v. Ford*, 281 N.C. 62, 67-68, 187 S.E.2d 741, 745 (1972). Although "a plea agreement arises in the context of a criminal proceeding, [and] remains in essence a contract," "it is markedly different from an ordinary commercial contract" because, "[b]y pleading guilty, a defendant waives many constitutional rights, not the least of which is his right to a jury trial." *State v. Blackwell*, 135 N.C. App. 729, 731, 522 S.E.2d 313, 315 (1999), (citing *State v. Rodriguez*, 111 N.C. App. 141, 144, 431 S.E.2d 788, 790 (1993), and *State v. Pait*, 81 N.C. App. 286, 289, 343 S.E.2d 573, 576 (1986)), *remanded on other grounds*, 353 N.C. 259, 538 S.E.2d 929 (2000). As a result, a defendant is entitled to relief from a trial court's judgment in the event that his decision to enter a guilty plea did not result from an informed choice. *See* N.C. Gen. Stat. § 15A-1022(b) (providing that a "judge may not accept a plea of guilty . . . without first determining that the plea is [the] product of [an] informed choice"). The extent to which a criminal defendant who entered a negotiated plea of guilty failed to make an informed choice by virtue of the fact that he did not get the benefit of his bargain is a question of law subject to *de novo* review. *State*

---

1. In his brief, Defendant notes that he was still a juvenile at the time that the trial court accepted his guilty plea and argues that his age should be taken into account in evaluating the extent to which his plea was knowingly, voluntarily, and understandingly entered. However, given that Defendant has not argued that any of the trial court's comments would not have been readily understood by a person of Defendant's age and the fact that Defendant expressed comprehension of the trial court's comments about the likelihood that he would be able to obtain appellate review of the transfer order in the event that he persisted in pleading guilty, we are unable to see anything about Defendant's level of maturity that calls for a different outcome than the one set out in the text with respect to this issue.

*v. Demaio,* __, N.C. __, __, 716 S.E.2d 863, 867 (2011) (stating that the issue of whether a defendant's "plea was not the product of informed choice because he cannot get the benefit of his plea bargain . . . presents a question of law, and, as such, is reviewed *de novo*").

In seeking to persuade us that he is entitled to relief from the trial court's judgment, Defendant emphasizes our decision in *Demaio,* in which the defendant entered a negotiated plea of guilty pursuant to a plea agreement in which "he preserved the right to appeal the denial of his motion to dismiss and motion *in limine.*" *Id.* at __, 716 S.E.2d at 865. More specifically, the defendant in *Demaio* "pled guilty on the condition that 'his right to appeal the court's denial of his motion to dismiss and [] motion to limit expert testimony' was preserved." *Id.* at __, 716 S.E.2d at 868 (alteration in original). As a result of the fact that the defendant had "no statutory right to appeal [the denial of his] motions . . . [and the fact that] this Court [concluded that it lacked the authority to] grant certiorari to review either of [his] motions," we held that, "because there [was] no way for Defendant to achieve his end of the plea bargain, his plea bargain violated the law," so that the defendant should be "place[d] . . . back in the position he was before he struck his bargain." *Id.*

Unlike the situation present in *Demaio* and a number of other cases in which this Court has determined that the inclusion of an invalid provision reserving the right to obtain appellate review of a particular issue had the effect of rendering a plea agreement unenforceable, *e.g., State v. Smith,* 193 N.C. App. 739, 743, 668 S.E.2d 612, 614 (2008) (vacating a plea agreement which provided that "*the defendant's pretrial motions shall be preserved for appeal*" because the defendant "was entitled to receive the benefit of his bargain" and could not receive that benefit due to the fact that his guilty plea precluded appellate review of the issues raised by those motions), *disc. review denied,* 363 N.C. 588, 684 S.E.2d 37 (2009), Defendant had ample notice that the provision in his plea agreement reserving his right to challenge the validity of the transfer order on appeal was, in all probability, unenforceable and elected to proceed with his guilty plea in spite of the fact that he knew that the provision in question was of questionable validity. As a result, Defendant is not entitled to relief from the trial court's judgment on the basis of the principle enunciated in *Demaio.*

At the time that Defendant tendered his plea of guilty, his trial counsel noted that, while "keeping his right to appeal the transfer to superior [court], he pleads guilty to these charges." Upon hearing this statement, the trial court inquired if "the statute allows you to preserve for Raleigh the decision by the Superior Court judge on the review of the District

Court judge's decision" and was told by Defendant's trial counsel that, "[a]s far as I can find, all I had to do was be sure we appeal the transfer to preserve that." At the trial court's suggestion, language reserving Defendant's right to seek appellate review of the transfer order was added to Defendant's plea transcript. As the plea colloquy continued, the trial court and Defendant discussed certain limitations on a defendant's ability to note an appeal after entering a guilty plea, the State provided a factual basis for Defendant's plea, and an explanation was offered for Defendant's decision to enter a negotiated plea of guilty. At that point, the trial court expressed concern about the fact that Judge Pittman had not made sufficient findings and conclusions in his transfer order and recessed court to examine the validity of his concerns about the transfer order.

As soon as court resumed after the conclusion of the lunch recess, the prosecutor argued, in reliance upon *Evans*, that the transfer order was valid and that Defendant did not have the right to seek appellate review of that order in the event that he entered a guilty plea. According to the prosecutor:

> In my research, though, I did find that the defendant cannot preserve his appeal if he does enter a guilty plea. That is clearly spelled out in the *Evans* case, and also there is another case, *Moore*, which stated that if a defendant did plead guilty, he could not preserve his appeal of the transfer order.

After noting that he had dissented from the decision in *Evans* and inquiring if any more recent decision addressed the appealability of a transfer order following the entry of a guilty plea, Judge Levinson engaged in a colloquy with counsel for the parties concerning the extent, if any, to which Defendant would actually be entitled to seek appellate review of the transfer order:

> THE COURT: ... I just want to make sure you've had a chance to talk with him just so he understands that it appears that there is a good chance, though I can't speak for the Court of Appeals, but at least by current law it appears that that decision by Judge Pitts, I think it was, I don't know him or her, but Judge Pitts, or Pittman?
>
> [DEFENDANT]: Pittman.
>
> THE COURT: Where there's a guilty plea as opposed to being convicted as a consequence of a jury verdict, that that decision by Judge Pittman is not reviewable and

-- by a later court. And I want to make sure you've had a chance to talk with him about that and he understands it.

[DEFENDANT]: We've talked about it. It's, I mean, I'm giving him the best I can understand, and that's coming from a guy that just got notified by the scooter store he qualified, so . . .

THE COURT: Well, so, Mr. Tinney, do you understand generally what I'm talking about here?

THE DEFENDANT: Yes, sir.

THE COURT: You want to repeat back to me what I've tried to tell you here about whether you have a right -- or whether or not you think the Court of -- do you understand -- let me put it this way. Do you understand that by pleading guilty here, and I'm going to appoint the public appellate defender's office in Durham to represent you on the appeal, but it appears that there's a pretty good chance that the Court of Appeals is not going to review again the decision that the District Court judge made here to transfer your case to Superior Court for hearing. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And you're prepared still to move forward on the basis that we've discussed this morning in terms of your guilty plea?

THE DEFENDANT: Yes, sir.

In addition to engaging in this discussion with Defendant, the trial court added a notation to Defendant's plea transcript referencing this on-the-record discussion of the appealability of the transfer order in light of *Evans* and *Moore*. As a result, the record clearly establishes that, at the time that he entered his guilty plea, Defendant had been clearly informed and fully understood that, in the event that he proceeded to enter his negotiated plea of guilty, he would, in all probability, not be able to obtain appellate review of the transfer order.

According to our decision in *Demaio*, a guilty plea entered pursuant to a transcript of plea which purports to reserve the right to seek appellate review of a particular legal issue which is not subject to such review following the entry of a guilty plea does not result in the entry of a plea which "is a product of informed choice." N.C. Gen. Stat. § 15A-1022(b).

However, unlike the situation at issue in *Demaio*, in which the defendant was never advised that the "preservation of rights" provision in his plea agreement was invalid, the trial court interrupted the taking of Defendant's plea, examined the issue of whether a defendant could seek appellate review of the lawfulness of an order transferring a case from the juvenile courts to the Superior Court under such circumstances, and specifically informed Defendant that there was a "good chance, though I can't speak for the Court of Appeals[,] . . . that [the] decision by Judge Pittman is not reviewable." Although Defendant acknowledges that the trial court discussed the likelihood that the Court of Appeals would hold that the transfer order was not subject to appellate review in light of his guilty plea, he asserts that the advice that the trial court gave to Defendant "was insufficient" on the grounds that, while his plea "was based on his understanding that there was at least some possibility that the appellate courts would review the decision to transfer his case to [S]uperior [C]ourt for trial as an adult," "there was no chance that [this Court] would review [the transfer] decision." As a result, the ultimate issue raised by Defendant's challenge to the validity of his guilty plea is whether the trial court's advice concerning the likely outcome of an attempt to seek appellate review of the transfer order in the aftermath of the entry of his guilty plea was sufficiently definitive to support a determination that Defendant's guilty plea was entered knowingly, voluntarily, and understandingly.

The record clearly reflects that Defendant should have had little doubt about the appealability of the transfer order in the event that he entered a guilty plea in the aftermath of his colloquy with the trial court. Both the prosecutor and the trial court cited the controlling decision of this Court and clearly informed Defendant that the likelihood that he would be able to obtain appellate review of the transfer order was extremely low. Although the trial court did not definitively state that Defendant had absolutely no right to successfully obtain a decision from this Court addressing the merits of his challenge to the transfer order, he could have scarcely reached any conclusion other than that the likelihood that he would be able to obtain relief from the trial court's judgment by challenging the transfer order on appeal was extremely remote. Given that set of circumstances, we are unable to conclude that the trial court's decision to speak in terms of probabilities rather than certainties justifies a decision to set the trial court's judgment aside. Thus, we conclude that, in light of the steps taken by the trial court to advise Defendant of the likelihood that his attempt to reserve his right to seek appellate review of the transfer order would prove unsuccessful, Defendant is not entitled to relief from the trial court's judgment on the basis of this contention.

## B. Ineffective Assistance of Counsel

[2] Secondly, Defendant argues that he should receive relief from the trial court's judgment on the grounds that he received ineffective assistance from his trial counsel. More specifically, Defendant argues that a "reasonable attorney would have informed his client that the plea agreement was invalid and objected to the entry of the plea." We do not believe that Defendant's contention has merit.

> To establish ineffective assistance of counsel, defendant must satisfy a two-prong test. . . . Under this two-prong test, the defendant must first show that counsel's performance fell below an objective standard of reasonableness as defined by professional norms. This means that defendant must show that his attorney made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, once defendant satisfies the first prong, he must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error.

*State v. Lee*, 348 N.C. 474, 491, 501 S.E.2d 334, 345 (1998) (citing *Strickland v. Washington*, 466 U.S. 668, 695, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 698 (1984)) (quoting *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985)) (citations and quotation marks omitted). As a result, in order to assert a successful ineffective assistance of counsel claim, it is not enough to simply show that the representation provided by the defendant's counsel was constitutionally inadequate. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203, 209-10 (1985) (holding that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel" and that "requiring a showing of 'prejudice' from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel will serve the fundamental interest in the finality of guilty pleas"). Thus, in order "[f]or a defendant to show that ineffective counsel was harmful, he must show that there is a reasonable probability that, but for counsel's error, he would not have entered a plea of guilty." *State v. Russell*, 92 N.C. App. 639, 644, 376 S.E.2d 458, 461 (1989).

Assuming, without in any way deciding, that Defendant received constitutionally deficient advice from his trial counsel concerning the extent to which he had the right to seek appellate review of the transfer order following the entry of his guilty plea, we are unable to conclude

STATE v. TINNEY

[229 N.C. App. 616 (2013)]

that Defendant can show the prejudice necessary to justify a decision to overturn his conviction. Simply put, as we have already explained, any indication that Defendant may have received ineffective assistance from his trial counsel to the effect that he could seek and obtain appellate review of the trial court's transfer order after entering a guilty plea was clearly dispelled by the trial court's warning that "there's a pretty good chance that the Court of Appeals is not going to review" a challenge to the lawfulness of the transfer order under the circumstances at issue here. In spite of the fact that he was clearly advised that his chances of obtaining appellate review of the transfer order after entering a guilty plea were, at best, remote, Defendant persisted in entering a plea of guilty in accordance with the terms set out in his plea agreement. Having made that decision with full knowledge of the virtually nonexistent likelihood that his attempt to reserve the right to seek appellate review of the transfer order would prove successful, we are unable to conclude that there is any reasonable likelihood that he would have withdrawn from his plea agreement and refrained from entering a guilty plea had his trial counsel correctly advised him that this Court would refuse to consider his challenge to the transfer order in the event that he persisted in pleading guilty. Moreover, given our determination that information contained in the existing record demonstrates that Defendant cannot make the necessary showing of prejudice, we have no difficulty in deciding that "the cold record reveals that no further investigation is required" and that Defendant's claim can be "developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), *cert. denied*, 535 U.S. 1114, 122 S. Ct. 2332, 153 L. Ed. 2d 162 (2002). As a result, we conclude that Defendant is not entitled to relief from the trial court's judgment on the basis of his ineffective assistance of counsel claim.

## III. Conclusion

Thus, for the reasons set forth above, we conclude that neither of Defendant's challenges to the trial court's judgment have merit. As a result, the trial court's judgment should be, and hereby is, affirmed.

AFFIRMED.

Judges McGEE and STEELMAN concur.