NO. COA14-126

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014

STATE OF NORTH CAROLINA,
    Plaintiff,

    v.                                    New Hanover County
                                          No. 10 CRS 60866-67
SUPREME JUSTICE ALLAH,
    Defendant.


Appeal by defendant from order and judgment entered 8 August 2012 by Judge W. Douglas Parsons in New Hanover Superior Court. Heard in the Court of Appeals 14 August 2014.

*Roy Cooper, Attorney General, by R. Marcus Lodge, Special Deputy Attorney General, for the State.*

*Anne Bleyman, for defendant-appellant.*


HUNTER, JR., Robert N., Judge.


Supreme Justice Allah ("Mr. Allah")[1] appeals from the denial of his motion to suppress, arguing that a warrant was needed for the search of his private residence though it is attached to an ABC licensed storefront. Mr. Allah also challenges the trial

---

[1] This Court will refer to Defendant, Supreme Justice Allah, as Mr. Allah for purposes of this opinion because Defendant was referred to as Mr. Allah throughout the trial transcripts. This Court notes that Defendant's full name is now Supreme Justice Shabazz-Allah.

court's conclusions of law and findings of fact. For the following reasons, we affirm the trial court's order.

## I. Facts & Procedural History

On 31 January 2011, a New Hanover County Grand Jury indicted Mr. Allah on charges of (i) possession of marijuana; (ii) possession with intent to manufacture, sell, and distribute marijuana; (iii) keeping and maintaining a place for the purpose of keeping and selling controlled substances; and (iv) possession of drug paraphernalia. On 12 July 2012, Mr. Allah made a motion to suppress all evidence resulting from illegal searches. The following month, on 7 August 2012, Mr. Allah's case came on for trial in New Hanover County before Judge W. Douglas Parsons. The trial judge denied the motion to suppress evidence. The transcript of the hearing tended to show the following facts.

Kenneth Simma ("Agent Simma") is a special agent with North Carolina Alcohol Law Enforcement ("ALE"). Agent Simma testified that on 23 October 2010 at approximately 9:00 p.m., he and another ALE agent, Agent Price, went to a convenience store called The Caribbean Lion to conduct an inspection. When Agents Simma and Price arrived, two or three patrons were "hanging around" the main area of The Caribbean Lion, which consisted of

a lobby, merchandise area, and a pool table. The patrons left the convenience store shortly after the ALE agents entered. Agent Simma testified that a juvenile male was working at the cash register. Once the agents identified themselves to the juvenile male, he turned around and yelled, "Mom, the police are here."

Shortly thereafter, Dianna Shabazz-Allah ("Mrs. Allah"), the permittee, introduced herself to Agent Simma and allowed Agents Simma and Price to enter the cash register area. Mrs. Allah was the person primarily responsible for running the store at the time of the inspection. Agent Simma testified that he smelled marijuana upon entering the convenience store, but recalled the smell growing stronger once behind the cash register. Agent Simma explained to Mrs. Allah that he and Agent Price were there to conduct an inspection, and asked Mrs. Allah to turn over any marijuana. Mrs. Allah said the smell came from customers in the store.

At that point, the two agents went with Mrs. Allah into a kitchen area behind the cash register. The room contained large kitchen equipment, shelves on both sides, and a piece of plywood in one corner. According to Agent Simma, the odor of marijuana was stronger near the plywood. Agent Simma testified that the

"piece of plywood opened up, and a little, four-year-old girl came out." Mrs. Allah explained she needed to go into the room behind the plywood because she had other children in there, and consented to the ALE agents going into the room with her

In the room behind the sheet of plywood, there were beds, a portable shower and toilet, and a television. In the room, another young male was watching television. The smell of marijuana continued to grow stronger. From there, Agent Simma asked Mrs. Allah for permission to enter another room, her bedroom, to which she consented. Mr. and Mrs. Allah's bedroom contained a couch and liquor bottles sitting on a bar.

The agents discussed the smell of marijuana with Mrs. Allah, asking her to hand over any marijuana on the premises. Mrs. Allah showed Agents Simma and Price an ashtray filled with marijuana ashes. At that point, Agent Simma also noticed a small bag of marijuana sitting in Mrs. Allah's open purse. Mrs. Allah handed the officers the small bag of marijuana.

For safety purposes, Agent Simma went to the front of the convenience store and asked the juvenile male to lock the doors because all the adults were in the back rooms. Agent Simma then asked him about any potential weapons in the building. At first, the boy said there were no weapons, but then remembered

that his father always carried a taser, though the boy did not know the location of his father or the taser at that time.

Once Agent Simma returned to the living area behind the store, he leaned up against a bookshelf. As he did so, "the bookshelf opened up and Mr. Allah came out." According to Mrs. Allah, Mr. Allah was returning from his full-time job as a certified nursing assistant. Once Mr. Allah exited the hidden doorway, Agent Simma asked if he had permission to search Mr. Allah for safety purposes, to which Mr. Allah raised his hands. Agent Simma found cash, a set of keys, and a small bag of marijuana.

Mr. Allah described the room hidden behind the bookshelf as his "recording studio." Agent Simma requested permission to search the recording studio, but Mr. Allah expressed concerns about a search "messing up his recording equipment." At that point, Agent Simma contacted the Wilmington Police Department for assistance in securing the location. Once officers from the Wilmington Police Department arrived, Mr. Allah said that "he had a little bit of marijuana, he used it for religious purposes"[2] and then proceeded to hand Agent Simma two small bags

---

[2] Mr. Allah explained that he purchased approximately four ounces of marijuana every month to use for religious purposes. Mr. Allah is a Rastafarian. As part of his beliefs, he "inhales

of marijuana. Although Mr. Allah offered this evidence voluntarily, he still did not consent to a search of the recording studio.

---

marijuana as part of his spiritual growth, maintenance, and he also has grown his hair for quite a long time as part of that."

Since Mr. Allah again refused to consent to a search of the recording studio, Agent Simma explained to Mr. and Mrs. Allah "that they were not under arrest, but that for safety purposes, because of the partitions or walls or whatever you want to call them opening up and finding more hidden areas, that for safety purposes, that they were going to be detained." After Agent Simma detained Mr. and Mrs. Allah, he obtained a search warrant from the magistrate's office. Agent Simma then read the warrant aloud to Mr. Allah and gave him a copy of the warrant before conducting a search of the recording studio. In the recording studio, Agent Simma found a large bag of marijuana, marijuana seeds, two guns, rolling papers, and a digital scale. Agent Simma arrested Mr. Allah and read him his Miranda rights. After Mr. Allah signed a statement describing his rights, Agent Simma asked Mr. Allah if he was a convicted felon, to which Mr. Allah replied "yes." Agent Price decided not to charge Mrs. Allah because she agreed to surrender her ABC permits and thus surrender her right to sell alcoholic beverages.

Mr. Allah was indicted on 31 January 2011. On 12 July 2012, Mr. Allah filed a motion to suppress evidence obtained as the result of an illegal search, which was denied on 10 August

2012 via written order. In the trial court's written order, the trial court made the following findings of fact:

4. Under N.C.G.S. Section 18B-502, North Carolina Alcohol Law Enforcement (hereinafter ALE) officers or agents have the authority to investigate the operations of each licensed premises and to make inspections of each such premises which hold an Alcoholic Beverage Control (hereinafter ABC) permit.

5. Such inspections of ABC permitted premises include viewing the entire premises pursuant to the statute.

6. That the ALE agents in this case made entry to the ABC permitted premises at 801 Dawson Street in the City of Wilmington, North Carolina to conduct such an inspection of the entire premises pursuant to statute.

7. That upon entry into these premises on October 23, 2010 at about 9:00 P.M., the ALE agents detected the odor of marijuana.

8. After detecting the odor of marijuana, the agents began to conduct their inspection of the ABC permitted premises.

9. As the agents went from place to place, such as in the side door, behind the cash register area enclosed by plexiglass, etc., the odor of marijuana became stronger.

10. That the agents asked for consent to go into other areas of the premises from the permit holder, the defendant's wife Dianna Allah and such consent was granted.

11. That as the agents went further towards the interior of the permitted premises which also contained the living quarters of the

defendant, the odor of marijuana became stronger.

12. The agents discovered, in plain view in the purse of Mrs. Allah, a bag of marijuana.

13. Defendant came out of a hidden sliding door and Agent Simma asked him if he could pat him down for officer safety, and defendant consented to such patdown verbally and also indicated his consent by raising his hands.

14. Agent Simma felt in defendant's pants pocket an object which appeared to him based upon his training and experience to be a controlled substance in a plastic bag.

15. Agent Simma then went into defendant's pocket and removed US currency and a plastic bag containing marijuana.

16. Defendant and his wife, the ABC permit holder, consented to the entry of the agents into each part of the permitted premises until Agent Simma asked him for consent to search his recording studio located inside the permitted premises.

17. Defendant then revoked his consent at which time Agent Simma froze the scene and detained defendant while he applied for a search warrant for the entire ABC permitted premises.

18. Agent Simma applied for and received a search warrant for said premises at approximately 12:35 A.M. on October 24, 2010, and returned to the premises and executed said search warrant at about 1:12 A.M. on October 24, 2010.

19. Upon executing said search warrant, agents found more than one and one-half

ounces of marijuana as well as two firearms, a Mossberg shotgun and a .22 caliber rifle at the premises authorized to be searched pursuant to said search warrant.

20. Upon finding these items of contraband, Defendant was placed under arrest and advised of his rights under *Miranda v. Arizona* by use of a written rights form.

21. Defendant waived his rights and agreed to speak to Agent Simma, and advised Agent Simma that he was in fact a convicted felon and that the marijuana found was his and that it was for personal use only for religious purposes.

The trial court then made the following conclusions of law:

2. That the entry by the ALE agents into the ABC permitted premises at 801 Dawson Street in the City of Wilmington, North Carolina on October 23, 2010 was lawful and proper.

3. That the entry by the ALE agents into each and every separate room or partition at the premises was by consent.

4. That the agents continued to conduct their inspection of the above-referenced ABC permitted premises pursuant to statutory authority and with the consent of the permit holder, Dianna Allah.

5. That the odor of marijuana detected by the ALE agents from their entry into the permitted premises and detected throughout the inspection of such ABC permitted premises gave the agents probable cause to conduct a warrantless search based upon exigent circumstances.

6. Based upon the facts as found herein and based upon the totality of the circumstances

existing at the ABC permitted premises at 801 Dawson Street in the City of Wilmington, the ALE Agents had exigent circumstances present entitling them to conduct a warrantless search of the entire premises.

7. That despite such probable cause and exigent circumstances, Agent Simma applied for and properly received a search warrant to conduct a complete search of said premises.

8. That said warrant was issued based upon probable cause, and was legally and properly issued and was a valid search warrant.

9. That the ALE agents had authority to enter into and inspect the entire ABC permitted premises pursuant to statutory and regulatory authority of the State of North Carolina.

10. That the arrest of the Defendant was based upon probable cause and was appropriate and with just cause.

11. That the Defendant was properly given his rights under *Miranda v. Arizona*.

12. That the statement given by Defendant thereafter was freely, voluntarily and understandingly given and that Defendant understood and voluntarily waived his rights and gave such statement of his own free will and without duress by anyone.

The trial court concluded that the ALE officers inspected the premises pursuant to statutory authority, pursuant to probable cause and exigent circumstances, and pursuant to a valid search warrant. Following the denial of Mr. Allah's

motion, he entered an *Alford* plea on 8 August 2012 to felony possession of marijuana, maintaining a place for keeping and selling controlled substances, possession of drug paraphernalia, and possession of a firearm by a felon.

Mr. Allah filed a notice of appeal on 12 November 2012.[3] Judge Parsons ruled the notice of appeal null and void on 13 November 2012 and stated that Mr. Allah did not appeal orally in open court. Mr. Allah then petitioned this court to grant certiorari, which we granted on 24 June 2013.

## II. Jurisdiction and Standard of Review

This appeal lies of right pursuant to N.C. Gen. Stat. § 7A-27 from a final judgment of the New Hanover Superior Court. Mr. Allah argues on appeal that the ALE agents did not have the authority to search the private dwelling areas at issue.

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).

---

[3] Mr. Allah's notice of appeal was dated 18 August 2012, but was not filed with the trial court until 12 November 2012.

A trial court's findings of fact "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Eason*, 336 N.C. 730, 745, 445 S.E.2d 917, 926 (1994). "At a suppression hearing, conflicts in the evidence are to be resolved by the trial court." *State v. McArn*, 159 N.C. App. 209, 212, 582 S.E.2d 371, 374 (2003).

"Under *de novo* review, we examine the case with new eyes." *State v. Young*, ___ N.C. App. ___, ___, 756 S.E.2d 768, 779 (2014). "[D]e *novo* means fresh or anew; for a second time, and an appeal *de novo* is an appeal in which the appellate court uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings." *Parker v. Glosson*, 182 N.C. App. 229, 231, 641 S.E.2d 735, 737 (2007) (quotation marks and citations omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (quotation marks and citation omitted).

### III. Analysis

Both parties agree the inspection of the retail area constituted a valid search pursuant to N.C. Gen. Stat. § 18B-502(a) (2013). Mr. Allah argues that the ALE officers had no

authority to search the living quarters or recording studio. For the following reasons, we disagree.

## A. The Retail Area

This Court has recognized that ABC permittees waive their Fourth Amendment rights "to the limited extent of inspection by officers incident to enforcement of State ABC regulations." *State v. Sapatc*h, 108 N.C. App. 321, 322-23, 423 S.E.2d 510, 512 (1992). The relevant ABC statute reads:

> To procure evidence of violations of the ABC law, alcohol law-enforcement agents, employees of the Commission, local ABC officers, and officers of local law-enforcement agencies that have contracted to provide ABC enforcement under G.S. 18B-501(f) shall have authority to investigate the operation of each licensed premises for which an ABC permit has been issued, to make inspections that include viewing the entire premises, and to examine the books and records of the permittee.

N.C. Gen. Stat. § 18B-502(a) (emphasis added).

Both parties contend the main issue is whether the living area and recording studio connected to the ABC licensed premises are considered part of the "entire premises." However, this Court does not need to reach that issue if the searches of the living area and recording studio were lawful searches notwithstanding the interpretation of N.C. Gen. Stat. § 18B-502(a).

**B. Living Area**

Generally searches of a private residence are only reasonable if supported by a valid warrant. *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978). One exception to this general rule is consent. "Consent . . . has long been recognized as a special situation excepted from the warrant requirement, and a search is not unreasonable within the meaning of the Fourth Amendment when lawful consent to the search is given." *State v. Smith*, 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997).

"[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). "As a general rule, the owner of the property or the person who is apparently entitled to give or withhold consent to search premises may give consent, and a person who has common authority over the premises may also give valid consent to search the premises." *State v. Early*, 194 N.C. App. 594, 602, 670 S.E.2d 594, 601 (2009).

Here, Mrs. Allah plainly had valid authority over the premises as Mr. Allah's wife and the holder of the ABC permit. Mrs. Allah testified that she "felt like [she] needed to

cooperate" with the authorities and Mr. Allah argues on appeal that Mrs. Allah's feeling rendered the consent involuntary. However, competent evidence exists via both Agent Simma's testimony and Mrs. Allah's testimony tending to show that Mrs. Allah provided her consent to enter all portions of the premises in dispute, with the exception of the recording studio area.

## C. Recording Studio

Defendant cites *Terry v. Ohio*, 392 U.S. 1 (1968) to argue that law enforcement officers "must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure . . . ." *Id.* at 20. Here, once Mr. Allah denied consent to search the recording studio behind the bookcase, Agent Simma took the proper action and obtained a search warrant. At the moment the consensual search ended, officers froze the search and only continued once they obtained a search warrant. As Agent Simma obtained a search warrant immediately after Mr. Allah objected to their search of the recording studio, Mr. Allah's argument that the search of the recording studio was constitutionally invalid is without merit.

As the ALE agents first obtained consent to search the living quarters not including the recording studio and then obtained a search warrant to search the recording studio, we

hold the trial court did not err in denying Mr. Allah's motion to suppress.

## IV. Conclusion

For the foregoing reasons, the trial court's order is AFFIRMED.

Judges STEELMAN and GEER concur.