HUNTER, JR., ROBERT N., Judge.
Defendant pled guilty to two counts of statutory rape of a person of the age of 14 years when the Defendant was at least six years older than the victim, statutory rape of a person of the age of 14 years when the Defendant was more than four but less than six years older than the victim, failure to submit a change of address as a sex offender, felonious breaking and entering, two counts of felonious larceny, two counts of felonious possession of stolen goods, and possession of a firearm by a convicted felon pursuant to a plea agreement. The trial court sentenced Defendant to a total of 34 to 53 years' imprisonment. The trial court sentenced Defendant as a recidivist to enroll upon his future release in a satellite based monitoring program ("SBM"). Defendant contends his guilty plea was not entered understandingly, knowingly, and voluntarily. Additionally, Defendant challenges the SBM program as an unconstitutional search under Grady v. North Carolina. We affirm the judgment of the trial court and remand for a new hearing to determine whether Defendant's enrollment in the SBM program is reasonable at this time.
I. Factual and Procedural History
A grand jury indicted Defendant for two counts of statutory rape of a person of the age of 14 years when the Defendant was at least six years older than the victim, statutory rape of a person of the age of 14 years when the Defendant was more than four but less than six years older than the victim, failure to submit a change of address as a sex offender, felonious breaking and entering, two counts of felonious larceny, two counts of felonious possession of stolen goods, and possession of a firearm by a convicted felon.
On 30 January 2015, Assistant District Attorney Kia L. Chavious offered Defendant a written plea agreement, which would be withdrawn if not accepted by 6 March 2015, and would be substituted for a second, less favorable agreement after that date. The first plea agreement read as follows:
The defendant will plead guilty as charged and indicted. The State will agree to consolidate the two counts of [statutory rape where the defendant is more than six years older than the victim] into one class B-1 felony. The State will agree to consolidate the remainder of the charges into the [statutory rape where defendant is more than four but less than six years older than the victim], a class C felony. The class C felony shall run at the expiration of the class B-1 felony. The State will stipulate to the existence of a Mitigating Factor and to sentencing in the Mitigated Range. The defendant shall receive an active sentence pursuant to structured sentencing. Sentencing will otherwise be in the discretion of the Court.
The second plea agreement, which would substitute for the above agreement after 6 March 2015, read as follows:
Defendant will plead guilty as charged and indicted. The State will agree to consolidate the [statutory rape where defendant is more than six years older than the victim] into one class B-1 felony. The State will agree to consolidate the class H felonies into one class G felony. The defendant will be sentenced to one class B-1 felony, one class C felony, one class F felony, and one class G felony. All sentences are to be consecutive. The State will agree to sentencing in the Presumptive Range. Sentencing will otherwise be in the discretion of the Court.
On 5 March 2016, Defendant appeared before the trial court to enter a guilty plea pursuant to the first written plea agreement. At the beginning of the hearing, Defendant's counsel stated: "[Defendant] was on a number of medications that he has been taken off of. At least one of which he is going through some withdrawal symptoms from. I have asked him if he is able to proceed and he assures me that he is." At the plea colloquy, Defendant stipulated to the following factual basis for the plea:
[W]ith regards to case number 14-CRS-53209, the State's evidence would show that on March 30, 2014, the defendant broke into the residence of Blaine Dalton located at 3483 Dave Road in Walkertown and stole several guns from the residence valued at approximately $1,500.
In reference to case number 14-CRS-053210, the State alleged that those guns that were stolen were possessed by [Defendant] who was a felon due to indecent liberties with a minor, a class F felony, that he plead guilty to in 2013. The date of offense is March 30, 2014 for the possession of a firearm by a felon.
The State further alleges that in case number 14-CRS-053211 the defendant, on March 29, 2014 stole a utility trailer that had a hundred gallon water tank and attached hoses that [were] the property of Jennifer Lynn Grubs and the value of that was $3,000.
As these crimes were committed [Defendant] was identified as a suspect. He was interviewed by Detective Pettycord of the Forsyth County Sheriff's Office and he confessed to committing those crimes and gave a statement to that effect. That would be the factual basis for the entry of plea in reference to the felony B & E, possession of stolen goods.
The defendant was also charged with failure to register as a sex offender. Being previously convicted of being a sex offender, which would be indecent liberties with a minor, after he was released from the Forsyth County Detention Center for being arrested for misdemeanor larceny, he did not report to the Sheriff's Office to give his new address. He was late so he was charged [sic] with failure to register as a sex offender.... It took some time to locate him, he was not where he was properly registered to be, obviously, and when they located [Defendant] they located him in the residence living with an adult female and her 14-year-old daughter.
... When Detective Pettycord was investigating what he was doing there, [Defendant] stated that he was friends with the mother and that she had allowed him to stay there, this is while warrants were pending for him. Detective Pettycord had inquired of [Defendant] and asked whether or not anything was going on with him and [the 14 year old girl]. He initially had denied that and said that they were just friends, however, due to the fact that she was the same age as a previous victim of his, Detective Pettycord, once the warrants were served on him, began listening to his jail phone calls while he was incarcerated at the Forsyth County Detention Center.
During those jail phone calls [Defendant] made several to the home that [the girl] lived in and also to a cell phone that she had in her possession, I believe. During those phone calls Detective Pettycord was able to overhear him making-[Defendant] making statements about having previously gotten [the girl] pregnant and stating that they were going to be together, they were in love and all of that stuff, things that [Defendant] was saying to [the girl]. Based on that information, he did record that phone call.
He then went to [the girl] and interviewed her and she stated that they had been in a sexual relationship and that they had engaged in sexual intercourse and oral sex on multiple occasions. The age difference between [Defendant] and [the girl] is just over six years. She was in fact-she did confirm that she had in fact gotten pregnant as a result of the sexual intercourse and that she had had an abortion previously, which [Defendant], I believe, also knew about.
Following the factual basis, the trial court stopped the plea colloquy and the court held a bench conference off the record. Subsequently, the court stated the State would not proceed with the matter at that time.
The next day, Defendant appeared in court to enter a guilty plea pursuant to the first written plea agreement. Defense counsel again mentioned Defendant's withdrawal symptoms, stating "His withdrawal symptoms yesterday when I spoke to him were not as severe as they appear today." The following exchange occurred:
THE COURT: He does not look well to me, [counsel].
COUNSEL: No, he does not.
THE COURT: Sir, may I ask what you have been taking, what you were taking?
DEFENDANT: Ativan, Halodol.
COUNSEL: And Neurotinin.
THE COURT: You are-for the record, you are shaking rather badly. When you went to stand a few moments ago you almost fell. What is causing that, sir, to the extent that you know?
DEFENDANT: Where I stopped taking the medication.
THE COURT: I am not comfortable hearing the matter at this time. Sheriff, if you will, have the nurse check him, please. This afternoon if he's better-if the nurse, or doctor, if needed, thinks he's okay then I will address it then. I believe the gentlemen needs to be checked by at least a nurse, and perhaps a physician, at this time. All right. We will just hold the matter open and check on your health, sir.
On 30 April 2015, Defendant appeared before the trial court to enter a plea of guilty. The trial court went through the following questions, recited in part, with Defendant:
THE COURT: Have the charges been explained to you by your lawyer?
DEFENDANT: Yes, ma'am.
THE COURT: Do you understand the charges?
DEFENDANT: Yes, ma'am.
THE COURT: Have you and your lawyer discussed the possible defenses, if any, to the charges?
DEFENDANT: Yes, ma'am.
THE COURT: And are you satisfied with the services of your lawyer?
DEFENDANT: Yes, ma'am.
THE COURT: Do you understand that you have the right to plead not guilty and to be tried by a jury?
DEFENDANT: Yes, ma'am.
THE COURT: And do you understand that at such trial, you have the right to confront and to cross-examine the witnesses against you?
DEFENDANT: Yes, ma'am.
THE COURT: And do you understand that by your plea, you give up your constitutional rights to a jury trial?
DEFENDANT: Yes, ma'am.
...
THE COURT: And have you-the transcript reveals that you have agreed to plead guilty as part of a plea arrangement. Is that correct?
DEFENDANT: Yes, ma'am.
THE COURT: ... The State agrees to consolidate the two counts of statutory sex offense where the defendant is more than six years older into one B1 felony and to consolidate all of the Class H felones into one Class G felony to be sentenced to one-therefore, the sentences would be one B1, one Class C, one F and one G. All sentences are to be consecutive. Is this your understanding? ... In addition to that, that you will-you will stipulate to Mitigating Factor No. 15 that you have accepted responsibility for your criminal conduct. Sentencing otherwise in the discretion of the Court.
The State dismisses the charges set forth on the transcript which are 14CRS54437, felonious larceny, and 54439, larceny of a motor vehicle. Is this correct and complete?
DEFENDANT: Yes.
THE COURT: Do you now accept this arrangement?
DEFENDANT: Yes, ma'am.
The trial court sentenced Defendant as a prior record level III to one Class B felony, one Class C felony, one Class F felony, and one Class G felony, with minimum sentences of 287, 96, 17, and 16 months, to be served consecutively.
Following Defendant's guilty plea, the court held a hearing to determine whether Defendant should enroll in SBM for his natural life. During the hearing, the following colloquy took place:
DISTRICT ATTORNEY: Under Prong No. 1, your Honor, the State would contend that this is a sexually violent offense under the statute.
Under Prong No. 2, the defendant has not been classified as a sexually violent predator.
Under Prong 3, the defendant is a recidivist in that he's been convicted of a second reportable offense.
Under Prong 4, the offense he is convicted of is not an aggravated offense.
Under Prong 5, it did-the offenses did involve the physical, mental or sexual abuse of a minor.
Under Prong 1, the State would contend that based on his recidivism, he's required to register for his natural life.
And under Prong 2, under satellite-based monitoring, that due to his recidivism, Prong B, he shall be ordered to enroll in satellite-based monitoring for a period of his natural life unless or until the program is terminated by statute or legislation.
...
THE COURT: The defendant shall enroll in satellite-based monitoring for the rest of his natural life ... unless terminated by statute.
DEFENSE COUNSEL: I would just object just to 2(b) based on the recent Grady case that's just come down. It has been found to be considered a search. And under Grady, there has to be, we would submit, a showing by the State that it is reasonable under the Fourth Amendment to be a reasonable what they call a search and seizure.
This is a very new case, your Honor. There really is not a whole lot of-or any at this point parameters by which to go by. But given that it has just recently come down, I am asking to put on the record that we would object to the lifetime satellite-based monitoring without a finding or showing by the State that it is reasonable.
DISTRICT ATTORNEY: And, your Honor, the Grady decision was decided on March 30th of this year. It does not dismantle the State's satellite-based monitoring program, nor does it address any sort of issues with regard to the constitutionality of it.
THE COURT: What was the law at the time that the offense was committed?
DISTRICT ATTORNEY: The statute is still in place as to when he was convicted. Grady has not overturned anything. So I would argue that the form is still valid because it definitely puts-
THE COURT: The Court will adopt the findings. Thank you. Anything further from the defense?
DEFENDANT: No, ma'am.
DEFENSE COUNSEL: No, your Honor. Just in regards to the satellite-based monitoring, again, I'll just renew my objection based on there not being a finding of reasonableness by the Court. Under the Fourth Amendment due process, we submit the statute as is is unconstitutional without that finding.
On 12 May 2015, Defendant filed two timely written notices of appeal-one to appeal the judgments entered upon his guilty plea and the other to appeal the order imposing lifetime SBM. Defendant then filed a petition for writ of certiorari on 16 December 2015 because "although these issues are not appealable as a matter of right following a guilty plea, they may be reviewed pursuant to a writ of certiorari."
II. Jurisdiction
Pursuant to Rule 21 of the North Carolina Rules of Appellate Procedure, a writ of certiorari may be permitted "when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists, or for review pursuant to N.C.G.S. § 15A-1422(c)(3) of an order of the trial court ruling on a motion for appropriate relief." N.C. R.App. P. 21. N.C. Gen.Stat. § 15A-1444(e) grants defendants entering a guilty plea the ability to petition for certiorari. Whether a defendant received the benefit of his bargain and accepted a plea deal as an informed choice "falls squarely within whether the trial judge followed proper procedure in accepting Defendant's guilty plea...." State v. Demaio, 216 N.C.App. 558, 564, 716 S.E.2d 863, 867 (2011). Thus, we grant Defendant's petition for writ of certiorari for the purpose of reviewing Defendant's guilty plea.
As for the appeal from the trial court order to enroll in SBM, that order is a final order from a superior court. State v. Singleton, 201 N.C.App. 620, 625-626, 689 S.E.2d 562, 565-566 (2010). As such, appeal lies in this Court as of right pursuant to N.C. Gen.Stat. § 7A-27.
III. Standard of Review
The standard of review for alleged violations of constitutional rights is de novo. State v. Graham, 200 N.C.App. 204, 214, 683 S.E.2d 437, 444 (2009). "De novo means fresh or anew; for a second time, and an appeal de novo is an appeal in which the appellate court uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings." State v. Allah, 236 N.C.App. 120, 127, 762 S.E.2d 524, 528 (2014) (quoting Parker v. Glosson, 182 N.C.App. 229, 231, 641 S .E.2d 735, 737 (2007) ).
IV. Analysis
A. Plea Agreement
"A plea of guilty involves the waiver of several fundamental rights, including freedom from self-incrimination and the right to a trial by jury. It is therefore imperative that guilty pleas represent a voluntary, informed choice." State v. Santos, 210 N.C.App. 448, 450-451, 708 S.E.2d 208, 210 (2011) (quoting State v. Atkins, 349 N.C. 62, 97, 505 S.E.2d 97, 119 (1998) ). It must affirmatively appear from the record on appeal that the plea was entered voluntarily and that the nature and consequences of the plea were explained to the defendant in open court. See State v. Tinney, 229 N.C.App. 616, 621, 748 S.E.2d 730, 734 (2013).
Defendant contends the plea entered pursuant to the second plea agreement was not a product of his informed choice. Citing State v. Collins, Defendant argues he is entitled to specific performance of the first written plea agreement:
"When viewed in light of the analogous law of contracts, it is clear that plea agreements normally arise in the form of unilateral contracts. The consideration given for the prosecutor's promise is not defendant's corresponding promise to plead guilty, but rather is defendant's actual performance by so pleading. Thus, the prosecutor agrees to perform if and when defendant performs but has no right to compel defendant's performance."
State v. Collins, 300 N.C. 142, 149, 265 S.E.2d 172, 176 (1980). We are not persuaded.
Collins also states: "[T]here is no absolute right to have a guilty plea accepted." Id. at 148, 265 S.E.2d at 176. The consideration given for the prosecutor's promise is defendant's actual performance by pleading guilty. State v. King, 218 N.C.App. 384, 388, 721 S.E.2d 327, 330 (2012). "[A] prosecutor may rescind his offer of a proposed plea arrangement before defendant consummates the contract by pleading guilty or takes other action constituting detrimental reliance upon the agreement." Collins, 300 N.C. at 148, 265 S.E.2d at 176. A plea agreement involving a sentencing recommendation from the State must have judicial approval before it can become effective. See N.C. Gen.Stat. § 15A-1023(b) (2015). Plea arrangements "are not binding upon the prosecutor ... until they receive judicial sanction." State v. Johnson, 95 N.C.App. 757, 759, 383 S.E.2d 692, 694 (1989) (quoting Collins, 300 N.C. at 147, 265 S.E.2d at 175 ).
And, although a plea agreement remains in essence a contract, it is "markedly different from an ordinary commercial contract." Tinney, 229 N.C.App. at 621, 748 S.E.2d at 734 (citations omitted). A defendant is entitled to relief if he did not enter the guilty plea as the result of an informed choice. Id. When there is evidence that a defendant signs a plea transcript and the trial court makes a careful inquiry of the defendant regarding the plea, it is sufficient to demonstrate the plea was entered into freely, understandingly, and voluntarily. See State v. Wilkins, 131 N.C.App. 220, 224, 506 S.E.2d 274, 277 (1998) ; State v. Thompson, 16 N.C.App. 62, 63, 190 S.E.2d 877, 878 (1972). "[W]here a guilty plea was freely, voluntarily and understandingly made, the plea should not be disturbed." State v. Jackson, 279 N.C. 503, 504, 183 S.E.2d 550, 551 (1971).
Here, the record supports the adjudication that the Defendant's guilty plea was freely, understandingly, and voluntarily given. Defendant's attempted pleas on 5 and 6 March were not accepted by the judge at trial, and therefore cannot become effective because the pleas did not meet judicial approval. On both occasions, the judges halted proceedings before a final resolution. On 6 March, the judge stopped the hearing because Defendant needed medical attention. Had Defendant entered a guilty plea in his state, it would raise questions of whether he did so knowingly, understandingly, and voluntarily. The trial court's actions were meant to protect Defendant from entering a plea in a questionable medical condition.
On 30 April, the trial court made a careful inquiry regarding the plea. The trial court read aloud the second plea agreement, and Defendant still agreed to plead guilty. At trial, Defendant's counsel did not object when the trial court read the second plea agreement aloud. As a result, we affirm the judgment of the trial court.
B. Satellite Based Monitoring
In 2006, the North Carolina General Assembly enacted N.C. Gen.Stat. § 14208.40, requiring the Division of Adult Correction of the Department of Public Safety to establish a sex offender monitoring program that uses a continuous SBM system. N.C. Gen.Stat. § 14-208.40 (2015). The SBM program overcame constitutional challenges for nearly a decade. See generally State v. Blue, --- N.C.App. ----, ----, 783 S.E.2d 524, 524-525 (2016).
In a challenge to the statute, the Supreme Court of the United States stated "The Fourth Amendment prohibits only unreasonable searches. The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." Grady v. North Carolina, 575 U.S. ----, 191 L.Ed.2d 459, ---- (2015). The Court recognized the Fourth Amendment's protection extended beyond the bounds of criminal investigations to include civil programs, such as North Carolina's SBM monitoring program. Grady, 575 U.S. at ----, 191 L.Ed.2d at ----. In the end, the Supreme Court remanded Grady to the New Hanover County Superior Court to determine whether the SBM program is reasonable.
Here, the trial court sentenced Defendant as a recidivist to enroll upon his release in a SBM program for life unless terminated by statute under N.C. Gen.Stat. § 14-208.40A(c) (2015). Defendant objected to the order as an unconstitutional search under Grady.
Defendant argues the State had a burden to prove, by a preponderance of the evidence that the SBM order was reasonable and constitutional. Defendant contends the trial court erred in failing to properly analyze the constitutional question and that error prejudiced Defendant.
The trial court must analyze the "totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." Blue, --- N.C.App. at ----, 783 S.E.2d at 527 (citing Grady v. North Carolina, 575 U.S. at ----, 191 L.Ed.2d at). The State bears the burden of proving the reasonableness of the SBM program. Id.
In the case at hand, the trial court did not determine and weigh the governmental interest in monitoring Defendant against the intrusiveness of the search and his expectations of privacy. The trial court stated that "Defendant is a recidivist, then upon release from imprisonment, the defendant shall enroll in satellite-based monitoring for his or her natural life unless monitoring is terminated pursuant to General Statute 14-208.43 ... So if the law changes, then it-and it says that it relates to this case, then he doesn't have anything to worry about." The trial court failed to consider the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations.
We therefore remand the trial court's order for a new hearing in which the trial court shall determine if SBM is reasonable, based on the totality of the circumstances, as mandated by the Supreme Court of the United States in Grady v. North Carolina.
V. Conclusion
For the foregoing reasons, we affirm the judgment of the trial court and remand for a new hearing to determine if SBM is reasonable.
AFFIRMED IN PART; REMANDED IN PART.
Judges ELMORE and DAVIS concur.
Report per Rule 30(e).