ELMORE, Judge.
 

 *572
 
 Alfred Franklin Worley (defendant) was convicted by a jury of multiple counts of felony breaking and entering, larceny, and possession of stolen goods. He appeals from an order denying his motion to suppress evidence seized during the executions of warrants to search his rental cabin and truck for stolen goods.
 

 Four days after a reported breaking and entering of a horse trailer and larceny of six identified items of horse tack, a deputy applied for and was issued warrants to search defendant's rental cabin and his truck for
 
 *573
 
 the horse tack. The search of the rental cabin yielded the stolen horse tack and other incriminating evidence justifying a second search of the cabin. Defendant was later arrested.
 

 Defendant moved to suppress the evidence seized during the searches of his cabin, arguing the warrants lacked probable cause because the deputy's affidavit underlying both search warrants established no nexus between defendant's rental cabin and the reported breaking and entering and larceny. The trial court concluded the affidavit established probable cause and entered an order denying defendant's suppression motion.
 

 On appeal, defendant argues again the warrants to search his cabin for the missing horse tack lacked probable cause because the underlying affidavit failed to establish a nexus between the criminal activity and his rental cabin. Because we hold that under the totality of the circumstances, the accumulation of reasonable inferences drawn from information contained within the affidavit sufficiently linked the criminal activity to defendant's cabin, and thus demonstrated the magistrate had a substantial basis to conclude that probable cause existed to issue the warrants, we affirm the trial court's order.
 

 I. Background
 

 On 28 December 2014, Deputy Matthew C. Owen of the Transylvania County Sheriff's Office (TCSO) applied for warrants to search defendant's truck and rental cabin for identified items of horse tack reported missing after a breaking and entering of a horse trailer on 441 Sugar Loaf Road. Deputy Owen's supporting affidavit revealed the following information.
 

 On 25 December 2014, deputies of the TCSO responded to a reported breaking and entering of a horse trailer located at 441 Sugar Loaf Road and discovered that horse tack worth approximately $1,135.00 was missing and last seen the previous morning. On 27 December 2014, Mrs. McCall, one of the property's owners, called the TCSO about the incident and reported that defendant was a likely suspect of the breaking and entering and larceny. She told Deputy Owen that defendant moved to Florida about one year ago, but she recently discovered he was back in town, and heard someone had seen defendant on Sugar Loaf Road. She reported that defendant was currently renting a cabin at a nearby resort, The Adventure Village and Lodgings (Adventure Village). She further stated that defendant had worked for the McCalls around their farm about one year ago and that, during that time, several tools and equipment went missing from their
 
 *415
 
 farm. Although the McCalls suspected defendant stole
 
 *574
 
 these items, they were never able to prove it. Mrs. McCall also stated that immediately before defendant moved to Florida, someone had broken into her daughter's car and stolen approximately $1,050.00.
 

 On 28 December 2014, Mr. McCall called the TCSO and reported to Deputy Owen that his son, Zach, had just observed defendant driving in a "very slow manner" down Sugar Loaf Road near the horse trailer. Mr. McCall stated that Zach drove toward defendant in an attempt to make contact with him, but defendant sped away and then turned into an apartment complex. Zach followed and when he turned into the complex, defendant sped away again, driving in a "very unsafe manner and at high speeds" through residential areas. Zach started to follow defendant again but stopped when the speed of pursuit became dangerous. Mr. McCall reported that Zach described defendant's truck as a grey GMC with an extended cab and temporary plates, and that they found the truck sitting "out of view" beside an office building at Adventure Village. Mr. McCall stated further that when defendant had worked on their farm, several items went missing, and that the larcenies stopped when defendant moved to Florida. Mr. McCall also reported that part of his fence had been knocked over when the horse trailer was broken into and entered, and that he observed a "fresh dent" on the grey GMC truck he believed belonged to defendant.
 

 Deputy Owen subsequently confirmed with management at Adventure Village that defendant was currently renting Cabin # 1 and was listed as the sole occupant on the lease. He discovered that defendant asked for a refund for his rental on 24 December 2014 so he could return to Florida. Deputy Owen also discovered a 1999 GMC Sierra Extended Cab Pickup Truck displaying temporary tags, registered to defendant, and parked "in an effort to be hidden behind the main office out of view behind a back hoe" at Adventure Village. When Deputy Owen examined the truck, he noticed a large and apparently recent dent on its driver's side, and he observed bullets on the driver's seat and floorboard. Deputy Owen checked defendant's criminal history and discovered that he had previously been convicted of first-degree burglary and felony larceny.
 

 Additionally, in his affidavit, Deputy Owen recited his training and experience investigating approximately 100 breaking-and-entering cases and testified that, based on his experience, criminals who commit breaking-and-entering and burglary crimes "will often return to an area if there is more property which can be taken or to scope out other properties to burglarize." Deputy Owen stated further that, in his opinion, defendant's "actions today would lead a normal person to believe that he is involved ... [by] running from the property owners and hiding his
 
 *575
 
 vehicle from [the] site after doing so." He stated further that as a convicted felon, it was unlawful for defendant to possess firearms.
 

 Supported by his affidavit, Deputy Owen applied for warrants to search Cabin # 1 and the grey GMC truck for six identified items of horse tack and other fruits of the crimes, which the magistrate issued. During the execution of the first warrant at Cabin # 1, Deputy Owen found and seized the horse tack sought, and other items of horse tack. He also observed and photographed other goods he suspected were stolen, including two trolling motors, several pairs of shoes, and a television. Supported by his first affidavit and these photographs, Deputy Owen applied for a second warrant to search Cabin # 1, which the magistrate issued. Deputy Owen then executed the second search warrant and seized these additional items, which were later discovered to have been stolen from a barn adjacent to 441 Sugar Loaf Road and a residence located at 553 Sugar Loaf Road.
 

 Defendant was arrested and indicted for several property-related offenses at the horse trailer and other nearby locations. After a two-day jury trial, defendant was convicted of multiple felonies arising from the stolen goods seized during the two searches at Cabin # 1: larceny and possession of stolen goods with respect to the horse tack taken from the horse trailer at 441 Sugar Loaf Road; breaking and entering, larceny after breaking and entering, and possession
 
 *416
 
 of stolen goods with respect to the trolling motors taken from the barn adjacent to 441 Sugar Loaf Road; breaking and entering, larceny after breaking and entering, and possession of stolen goods with respect to the shoes and television taken from the residence at 553 Sugar Loaf Road; habitual breaking and entering; and possession of a firearm by a felon. The trial court consolidated the offenses into four judgments and sentenced defendant to fifty-six to ninety-eight months of incarceration.
 

 Prior to trial, defendant filed a motion to suppress the evidence seized from the searches at Cabin # 1, arguing the warrants lacked probable cause because Deputy Owen's affidavit established no "nexus between the alleged crimes and the location to be searched." At the suppression hearing, the trial court reviewed Deputy Owen's affidavit, concluded it established probable cause to issue the search warrants, and then entered an order denying defendant's suppression motion. Defendant appeals this suppression order.
 

 II. Analysis
 

 Defendant contends the trial court committed plain error by denying his motion to suppress evidence seized from his rental cabin because
 
 *576
 
 the search warrants lacked probable cause. He argues the affidavit supporting both warrants to search his rental cabin lacked a sufficient nexus between Cabin # 1 and the reported breaking and entering and larceny at the horse trailer on 441 Sugar Loaf Road. We disagree.
 

 A. Standard of Review
 

 As defendant concedes, although he moved to suppress this evidence before trial, because he failed to object to its admission at trial, he failed to preserve this error and is thus entitled only to plain error review of the suppression order.
 
 See
 

 State v. Larkin
 
 ,
 
 237 N.C. App. 335
 
 , 339,
 
 764 S.E.2d 681
 
 , 685 (2014),
 
 disc. rev. denied
 
 ,
 
 368 N.C. 245
 
 ,
 
 768 S.E.2d 841
 
 (2015). To establish plain error, a defendant "must first demonstrate that the trial court committed error, and next 'that absent the error, the jury probably would have reached a different result.' "
 

 Id.
 

 (quoting
 
 State v. Haselden
 
 ,
 
 357 N.C. 1
 
 , 13,
 
 577 S.E.2d 594
 
 , 602,
 
 cert. denied
 
 ,
 
 540 U.S. 988
 
 ,
 
 124 S.Ct. 475
 
 ,
 
 157 L.Ed.2d 382
 
 (2003) ).
 

 We review an order denying a motion to suppress to determine "whether the trial court's 'underlying findings of fact are supported by competent evidence ... and whether those factual findings in turn support the [trial court's] ultimate conclusions of law.' "
 
 State v. Allman
 
 ,
 
 369 N.C. 292
 
 , 296,
 
 794 S.E.2d 301
 
 , 304 (2016) (quoting
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982) ). We review
 
 de novo
 
 a trial court's conclusion that a magistrate had probable cause to issue a search warrant.
 
 See
 

 id.
 
 at 296-97,
 
 794 S.E.2d at 305
 
 .
 

 In determining whether probable cause exists to issue a search warrant, "[a] magistrate 'must make a practical, common-sense decision' based on the totality of the circumstances, whether there is a 'fair probability' that [evidence] will be found in the place to be searched."
 
 State v. McKinney
 
 ,
 
 368 N.C. 161
 
 , 164,
 
 775 S.E.2d 821
 
 , 824 (2015) (quoting
 
 Illinois v. Gates
 
 ,
 
 462 U.S. 213
 
 , 238,
 
 103 S.Ct. 2317
 
 ,
 
 76 L.Ed.2d 527
 
 (1983) ).
 

 Reviewing courts accord " 'great deference' " to an issuing magistrate's probable-cause determination.
 
 Allman
 
 ,
 
 369 N.C. at 293-94
 
 ,
 
 794 S.E.2d at 303
 
 (quoting
 
 Gates
 
 ,
 
 462 U.S. at 236
 
 ,
 
 103 S.Ct. 2317
 
 ). Our role " 'is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.' "
 
 State v. Arrington
 
 ,
 
 311 N.C. 633
 
 , 638,
 
 319 S.E.2d 254
 
 , 258 (1984) (quoting
 
 Gates
 
 ,
 
 462 U.S. at 238
 
 ,
 
 103 S.Ct. 2317
 
 ). We use a "totality of the circumstances test to determine whether probable cause exist[ed]."
 
 Allman
 
 ,
 
 369 N.C. at 293
 
 ,
 
 794 S.E.2d at
 
 303 (citing
 
 Arrington
 
 ,
 
 311 N.C. at 643
 
 ,
 
 319 S.E.2d at
 
 260-61 ).
 

 *577
 

 B. Discussion
 

 Defendant contends the warrants to search his rental cabin lacked probable cause because the supporting affidavit was "based on the suspicions of [Mr.] and [Mrs.] McCall but not on a nexus between the breaking and entering of the horse trailer at 441 Sugar Loaf Road and [defendant's] cabin." We disagree.
 

 *417
 
 We review the sufficiency of a search warrant affidavit to ensure the facts and circumstances described and all reasonable inferences drawn therefrom supplied a magistrate " 'reasonable cause to believe that the search will reveal the presence of the [items] sought on the premises described in the [warrant] application,' and that those items 'will aid in the apprehension or conviction of the offender.' "
 
 Allman
 
 ,
 
 369 N.C. at 294
 
 ,
 
 794 S.E.2d at 303
 
 (quoting
 
 State v. Bright
 
 ,
 
 301 N.C. 243
 
 , 249,
 
 271 S.E.2d 368
 
 , 372 (1980) ).
 

 A supporting affidavit " 'must establish a nexus between the [evidence] sought and the place to be searched.' "
 
 State v. Parson
 
 , --- N.C. App. ----, ----,
 
 791 S.E.2d 528
 
 , 536 (2016) (quoting
 
 State v. Oates
 
 ,
 
 224 N.C. App. 634
 
 , 644,
 
 736 S.E.2d 228
 
 , 235 (2012),
 
 disc. rev. denied
 
 ,
 
 appeal dismissed
 
 ,
 
 366 N.C. 585
 
 ,
 
 740 S.E.2d 473
 
 (2013) ). Ideally, this nexus is established by direct evidence "showing that criminal activity actually occurred at the location to be searched or that the fruits of a crime that occurred elsewhere are observed at a certain place."
 

 Id.
 

 (quoting
 
 Oates
 
 ,
 
 224 N.C. App. at 644
 
 ,
 
 736 S.E.2d at
 
 235 ). Yet absent evidence directly linking criminal activity to a particular place, this nexus may be inferred by the accumulation of reasonable inferences drawn from information contained within an affidavit.
 
 See
 

 Allman
 
 ,
 
 369 N.C. at 296-98
 
 ,
 
 794 S.E.2d at 305-06
 
 (affirming probable-cause determination despite warrant affidavit not "directly link[ing] defendant's home with evidence of drug dealing" because nexus could be reasonably inferred from factual allegations and accumulated circumstantial evidence);
 
 see also
 

 State v. Sinapi
 
 ,
 
 359 N.C. 394
 
 , 399,
 
 610 S.E.2d 362
 
 , 365 (2005) ("[A] magistrate is entitled to draw reasonable inferences from the material supplied to him by an applicant for a warrant." (citing
 
 State v. Riggs
 
 ,
 
 328 N.C. 213
 
 , 221,
 
 400 S.E.2d 429
 
 , 434 (1991) ).
 

 As an initial matter, defendant correctly notes the affidavit contained no direct evidence that anyone had observed him break into the horse trailer, steal the horse tack, bring it to his cabin, or store the horse tack there. In the context of search warrants, " 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' "
 

 *578
 

 State v. Benters
 
 ,
 
 367 N.C. 660
 
 , 664-65,
 
 766 S.E.2d 593
 
 , 598 (2014) (quoting
 
 Riggs
 
 ,
 
 328 N.C. at 219
 
 ,
 
 400 S.E.2d at
 
 433 ). Here, Deputy Owen's affidavit established there was a reported breaking and entering and larceny and allegations about defendant that permitted the magistrate to conclude there was probable cause to believe that defendant was the offender under the circumstances.
 

 The affidavit established that when the McCalls employed defendant to work around their farm, several tools and pieces of equipment went missing and were never recovered; that immediately before defendant moved to Florida, someone broke into the McCall's daughter's car and stole approximately $1,050.00; that defendant rented a cabin located within close proximity to the McCall's property around the same time as the reported breaking and entering and larceny; and that defendant had prior felony convictions for first-degree burglary and felony larceny. It was thus reasonable for the magistrate to infer that someone with such a criminal history that was familiar with the McCall's property and may have successfully stolen from them in the past, might return and attempt to steal from the McCall's property again.
 

 Based on Mr. McCall's statements that when Zach saw defendant driving down Sugar Loaf Road and attempted to contact him, defendant sped quickly away and then turned into an apartment complex; that when Zach followed defendant into the complex, he again sped quickly away and Zach attempted to but was unable to follow defendant safely; and that the McCalls and Deputy Owen observed defendant's truck parked deliberately outside of plain view at Adventure Village, it was reasonable to infer that defendant might have attempted to evade Zach after stealing from the McCalls and to hide his truck after Zach saw him. Based on Mr. McCall's statement that a section of his fence had been knocked over when the breaking and entering occurred, and that Mr. McCall and Deputy Owen observed an apparently fresh dent on defendant's truck, it was reasonable to infer that defendant's truck knocked down
 
 *418
 
 the fencing during the commission of the crimes.
 

 Based on Deputy Owen's statement that defendant sought a refund for his cabin on the same day of the reported incident, it was reasonable to infer that defendant may have been attempting to immediately leave town and return home with the fruits of his larceny. And based on Mrs. McCall's statements that someone told her defendant was seen on Sugar Loaf Road immediately before the incident; Mr. McCall's statements that Zach saw defendant driving slowly down Sugar Loaf Road three days after the incident; and that, based on Deputy Owen's extensive experience investigating breaking-and-entering cases, criminals often return to the area if there is more property to be taken or to
 
 *579
 
 scope out other properties to burglarize, it was reasonable to infer further that defendant might have scoped out the McCalls property before the crimes and then returned to consider whether there was any more property he could steal. Under the totality of circumstances, we conclude the affidavit established a sufficient "probability or substantial chance" that defendant participated in the reported breaking and entering of the horse trailer and larceny of the horse tack.
 

 Accordingly, having determined the affidavit established probable cause to believe defendant participated in the crimes, we must now determine whether it supplied the magistrate " 'reasonable cause to believe' " a search of defendant's cabin would yield the stolen horse tack, which would certainly " 'aid in the apprehension or conviction of the offender.' "
 
 See
 

 Allman
 
 ,
 
 369 N.C. at 294
 
 ,
 
 794 S.E.2d at 303
 
 (quoting
 
 Bright
 
 ,
 
 301 N.C. at 249
 
 ,
 
 271 S.E.2d at
 
 372 ).
 

 Here, the crime being investigated was a confirmed breaking and entering and larceny reported to have occurred only four days earlier, and the items sought included detailed descriptions of missing horse tack, including two saddle pads, two saddles, and two bridles with bits. Although the affidavit never explicitly stated that defendant's rental cabin or his truck were the likely repository for the horse tack, it established that defendant permanently resided in Florida and was the sole occupant of a nearby cabin rented around the same time as the incident, and that a GMC truck parked outside Adventure Village was registered to defendant. The affidavit never explained the geographic relationship between the horse trailer and defendant's cabin, but it did explain their locations, permitting the magistrate to draw a reasonable inference from the close proximity of the larceny to defendant's cabin. Further, the affidavit did not allege that defendant kept any permanent residence, office, or storage facility in North Carolina, providing a reasonable inference that defendant's cabin or truck were the only two possible storage places for the stolen goods sought.
 

 Because Deputy Owen alleged in his affidavit that he examined defendant's truck and observed in plain view bullets lying on the driver's seat, it was reasonable for the magistrate to infer that Deputy Owen did not observe any stolen horse tack when he peered through the truck's windows, and that he looked in the truck bed. It was reasonable to infer further that since certain larger items like the two saddles were unobserved, and could not reasonably be expected to be stored in any concealed compartment in the truck or on defendant's person, these items were likely to be stored in his rental cabin.
 
 See
 

 State v. Whitley
 
 ,
 
 58 N.C. App. 539
 
 , 544,
 
 293 S.E.2d 838
 
 , 841 (1982) ("Since at least some of the
 
 *580
 
 items the informant alleged defendant possessed are not such as could reasonably be expected to be stored on defendant's person, ... the inference that the stolen goods were possessed at defendant's residence reasonably arises....").
 

 Based on the allegations and circumstances contained within the affidavit, it was reasonable for the magistrate to infer cumulatively that defendant, an out-of-state resident suspected of a reported breaking and entering and larceny from four days earlier, might keep the fruits of the larceny at his nearby rental cabin. "These are just the sort of commonsense inferences that a magistrate is permitted to make when determining whether probable cause exists."
 
 Allman
 
 ,
 
 369 N.C. at 297
 
 ,
 
 794 S.E.2d at 305
 
 . Accordingly, we conclude the affidavit established a sufficient nexus between the criminal activity and
 
 *419
 
 defendant's rental cabin, and thus provided the magistrate probable cause to issue the warrants to search Cabin # 1 for the missing horse tack.
 

 III. Conclusion
 

 Under the totality of the circumstances, despite evidence not directly linking the criminal activity to the place to be searched, the warrant affidavit established through the accumulation of reasonable inferences a sufficient nexus between defendant's rental cabin and the reported criminal activity, and thus provided the magistrate a substantial basis to conclude that probable cause existed to search defendant's cabin for the missing horse tack. Therefore, we hold that the trial court properly denied defendant's motion to suppress and affirm its order.
 

 AFFIRMED.
 

 Judges INMAN and BERGER concur.