IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-905

No. COA22-527

Filed 29 December 2022

Johnston County, Nos. 18CRS056157-58; 18CRS001857

STATE OF NORTH CAROLINA

v.

BOBBY LESHAWN BYRD

Appeal by Defendant from order entered 29 July 2021 by Judge James Ammons in Johnston County Superior Court. Heard in the Court of Appeals 16 November 2022.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General John F. Oates, Jr., for the State-Appellee.*

*Drew Nelson for Defendant-Appellant.*

COLLINS, Judge.

¶ 1 Defendant Bobby Leshawn Byrd appeals the trial court's order denying his motion to suppress evidence obtained during the search of his cellphone. Defendant argues that probable cause did not support issuing a warrant to search the cellphone. We affirm the trial court's order.

## I. Background

¶ 2 Defendant was arrested on 7 October 2018 and subsequently indicted for first

degree burglary, first degree kidnapping, robbery with a dangerous weapon, conspiracy to commit those offenses, and having attained violent habitual felon status. Prior to trial, Defendant moved to suppress all evidence obtained from the search of his cellphone. The motion to suppress came on for hearing on 26 July 2021. The trial court heard arguments and considered the search warrant application, which included the affidavit of Detective R. L. Ackley.

¶ 3          The facts as alleged in Ackley's affidavit tended to show that, on the night of 13 September 2018, deputies from the Johnston County Sheriff's Department responded to a call regarding a suspicious vehicle and shooting investigation. Upon arriving in the area, a deputy was flagged down by Zachary McNeill, who stated that he was the victim of a home invasion. McNeill said that two unknown black men kicked in the door to his mobile home, fired multiple shots into his home, bound McNeill's hands, covered his face, and hit him in the head with a pistol. After approximately one hour had passed, and once McNeill no longer heard the men's voices, McNeill fled out the front door of his home. McNeill reported that the men stole an Xbox, cash, clothing, and a distinct red and black Tourister suitcase that had been gifted to McNeill by his employer.

¶ 4          One of McNeill's neighbors heard gunshots coming from McNeill's home and drove to investigate the disturbance. The neighbor noticed an older-model, dark colored Lexus with chrome rims parked near McNeill's home, and he provided

deputies with a description of the car and the driver. That same night, in a separate incident, Defendant was shot in the leg while at a Comfort Inn and then transported to the hospital in an older-model dark Lexus with chrome rims. Ackley was made aware of the similarity between the car observed near McNeill's home and the car that transported Defendant to the hospital, and he obtained a photo of the car that transported Defendant to the hospital. McNeill's neighbor reviewed the photo, and immediately identified the car as the same one he saw parked near McNeill's home. Ackley seized the car and contacted its registered owner, Latasha Surles. Surles consented to a search of her car, a 1998 black Lexus 400 with chrome rims. Law enforcement searched the Lexus, and they found a white LG cellphone and a red and black Tourister suitcase. Surles was later interviewed by law enforcement, wherein she stated that Defendant, who is her cousin, owns a white LG cellphone that was missing. She explained that she loaned her Lexus to a man named Elias Sanders on the night of the home invasion, but that she did not know what Sanders "used her vehicle for or who was with him."

¶ 5 Following the parties' arguments, the trial court entered a written order denying Defendant's motion to suppress. The case came on for trial on 6 October 2021, and Defendant again moved to reconsider the denial of the motion to suppress. The trial court denied Defendant's motion. The jury found Defendant guilty of first degree burglary, first degree kidnapping, robbery with a firearm, and of being a

violent habitual felon. The trial court sentenced Defendant to the mandatory term of life in prison without parole. Defendant gave proper oral notice of appeal in open court.

## II. Discussion

¶ 6 Defendant argues that the trial court improperly denied his motion to suppress the evidence collected from the cellphone because the search warrant was not supported by probable cause. Specifically, Defendant argues that the affidavit in support of the warrant failed to allege sufficient facts to show a nexus between Defendant's cellphone and the home invasion. We disagree.

¶ 7 This Court reviews a trial court's denial of a motion to suppress to determine "whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law." *State v. Wiles*, 270 N.C. App. 592, 595, 841 S.E.2d 321, 325 (2020) (citation omitted). Unchallenged findings of fact are binding on appeal. *State v. Fizovic*, 240 N.C. App. 448, 451, 770 S.E.2d 717, 720 (2015). A trial court is only required to make a finding of fact "when there is a material conflict in the evidence," *State v. Bartlett*, 368 N.C. 309, 312, 776 S.E.2d 672, 674 (2015), and this Court may consider such undisputed evidence when determining whether the trial court's conclusions of law are supported. *State v. Wiggins*, 210 N.C. App. 128, 138, 707 S.E.2d 664, 672 (2011). We review the trial court's conclusions of law de novo. *Wiles*, 270 N.C. App. at 595, 841 S.E.2d at 325.

¶ 8        The Fourth Amendment provides: "The right of the people to be secure in their . . . effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  However, "what the Constitution forbids is not all searches and seizures, but *unreasonable* searches and seizures."  *State v. Ladd*, 246 N.C. App. 295, 301, 782 S.E.2d 397, 401 (2016) (quotation marks and citations omitted).  "[A] search occurs when the government invades reasonable expectations of privacy to obtain information." *State v. Perry*, 243 N.C. App. 156, 167, 776 S.E.2d 528, 536 (2015) (citation omitted).  In order to determine whether an individual possesses a reasonable expectation of privacy, this Court must consider whether (1) "the individual manifested a subjective expectation of privacy" and (2) "society is willing to recognize that expectation as reasonable." *Id.* (quotation marks and citation omitted).

¶ 9        The Supreme Court of the United States has acknowledged that substantial privacy concerns are implicated in the search of a cellphone, holding that law enforcement must first obtain a warrant in order to search the contents of a cellphone—even when a cellphone is seized in a search incident to a lawful arrest. *Riley v. California*, 573 U.S. 373 (2014); *see Ladd*, 246 N.C. App. at 302, 782 S.E.2d at 402 (holding that officers "must generally secure a warrant before searching a cell

phone seized incident to arrest" as "serious privacy concerns arise in the context of searching digital data"). A valid search warrant must be based on probable cause, and our courts examine the totality of the circumstances to determine whether such probable cause exists. *State v. Worley*, 254 N.C. App. 572, 576, 803 S.E.2d 412, 416 (2017). Probable cause means that our courts "must make a practical, common-sense decision based on the totality of the circumstances, whether there is a fair probability that evidence will be found in the place to be searched." *Worley*, 254 N.C. App. at 576, 803 S.E.2d at 416 (quotation marks, brackets, and citations omitted). This Court has held that affidavits "must establish a nexus between the objects sought and the place to be searched." *State v. McCoy*, 100 N.C. App. 574, 576, 397 S.E.2d 355, 357 (1990) (citations omitted).

¶ 10 Here, the trial court made the following relevant, unchallenged findings of fact to support the denial of Defendant's motion to suppress:

> 8. On 13 September 2019, officers responded to a suspicious vehicle complaint on Pine Level Road in Smithfield, North Carolina.
>
> 9. During the investigation into the suspicious vehicle, Zachary McNeil[l] advised officers of a home invasion.
>
> 10. Mr. McNeil[l] advised that two unknown black males entered his house, tied him up, ransacked his house, and stole items from his home.
>
> 11. The stolen items included one thousand dollars, men's clothing, and a red and black Tourister suitcase.
>
> 12. An independent witness advised officers that he saw

an older modeled, dark in color Lexus with chrome rims leaving the scene of the home invasion.

13. Later that morning, a black male was brought to the emergency room of Johnston Memorial Hospital with a gunshot wound. The black male was brought to the hospital in a dark in color Lexus with chrome rims.

14. The officers' investigation led them to a 1998 black Lexus 400 with the license plate number EJT-1456.

15. A picture of the Lexus was taken and shown to the witness who saw the car, who identified the car as the car he saw leaving the scene of the home invasion.

16. Detective Ackley then seized the car and interviewed the owner.

17. The owner of the Lexus provided Detective Ackley consent to search the car.

18. While searching the car, Detective Ackley found a white in color LG phone and a red and black Tourister suitcase.

. . . .

20. The search warrant affidavit provides considerable information regarding the Affiant's knowledge of how evidence can be stored and hidden on cell phones.

21. The Affiant listed the item to be searched as the LG white in color cell phone found in the 1998 black Lexus.

¶ 11 These unchallenged findings of fact support the trial court's conclusion of law that the search warrant was based on probable cause because these findings show that: McNeill reported that he was the victim of a home invasion and that, among other things, a distinct red and black Tourister suitcase was stolen from his home; a neighbor provided eyewitness testimony that he saw an older-model, dark Lexus with

chrome rims near McNeill's home at the time of the invasion; that same neighbor later positively identified the 1998 black Lexus 400 with chrome rims as the same vehicle that left the scene of the home invasion; Defendant was taken to the hospital in a dark in color Lexus with chrome rims; and the white LG cellphone was discovered in the Lexus, along with the specific red and black Tourister suitcase that was taken from McNeill's home. These findings show the requisite nexus between Defendant's white LG cellphone and the home invasion. *See McCoy*, 100 N.C. App. at 576, 397 S.E.2d at 357.

¶ 12          Moreover, the trial court's conclusion of law is further supported by the undisputed facts established by Surles' interview with law enforcement. *Wiggins*, 210 N.C. App. at 138, 707 S.E.2d at 672. Surles explained that: she was the owner of the Lexus; she loaned the car to Elias Sanders during the morning hours of 13 September 2018; and Defendant was her cousin and the owner of a white LG cellphone that was missing as of the time of the interview. After Surles provided consent to search the car, law enforcement found both the white LG cellphone and the distinct red and black Tourister suitcase in the car. Under the totality of the circumstances, these facts show a nexus between Defendant's white LG cellphone and the home invasion. *Worley*, 254 N.C. App. at 576, 803 S.E.2d at 416; *McCoy*, 100 N.C. App. at 576, 397 S.E.2d at 357.

### III.    Conclusion

As the evidence here supports the findings of fact, and the findings of fact support the trial court's conclusion of law that "[t]he search warrant of the seized cell phone was based on sufficient probable cause," we affirm the trial court's denial of Defendant's motion to suppress.  *Wiles*, 270 N.C. App. at 595, 841 S.E.2d at 325.

AFFIRMED.

Judges DIETZ and MURPHY concur.