IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-902

Filed 4 June 2025

Onslow County, Nos. 18CRS051275-660, 18CRS051276-660, 22CRS000487-660

STATE OF NORTH CAROLINA

v.

JONATHAN JERMANE HANNAH, Defendant.

Appeal by Defendant from judgment entered 16 March 2023 by Judge Thomas H. Lock in Onslow County Superior Court. Heard in the Court of Appeals 20 March 2024.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Meredith L. Britt, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Jillian C. Franke, for Defendant-Appellant.*

CARPENTER, Judge.

Jonathan Jermane Hannah ("Defendant") appeals from a judgment entered upon his guilty plea to statutory rape of a person fifteen years old or younger, statutory sex offense of a person fifteen years old or younger, sexual exploitation of a minor, and obstruction of justice. On appeal, Defendant argues his plea was not entered knowingly, intelligently, and voluntarily because certain issues purportedly preserved for appeal as part of his guilty plea are not appealable. Further, Defendant argues the trial court erred in denying his motions to suppress evidence obtained

from his cell phone, where consent was unlawfully obtained. After careful review, we deny Defendant's petition for writ of certiorari ("PWC") and affirm the trial court's denial of Defendant's motions to suppress.

## I. Factual & Procedural Background

On 10 July 2018, an Onslow County grand jury returned true bills of indictment against Defendant, charging him with: statutory rape of a person fifteen years old or younger, in violation of N.C. Gen. Stat. § 14-27.25(a); statutory sex offense of a person fifteen years old or younger, in violation of N.C. Gen. Stat. § 14-27.30(a); and three counts of first-degree sexual exploitation of a minor, in violation of N.C. Gen. Stat. § 14-190.16. On 7 June 2022, a grand jury returned a subsequent true bill of indictment, charging Defendant with three counts of common-law obstruction of justice.

During pretrial hearings, the trial court ruled on several pretrial motions from Defendant. Specifically, the trial court denied: Defendant's Motion for Bill of Particulars; Defendant's motion in *limine* to prohibit references to indictments against Defendant, in part; and Defendant's motion in *limine* regarding the State's failure to file a notice of expert witness for the Cellebrite extraction of Defendant's cell phone. The trial court later denied Defendant's motions to suppress evidence of: the search and Cellebrite extraction from his cell phone; statements at Jacksonville Police Department on 20 October 2017; and statements to Detective Keith Johnston

at Dunkin' Donuts and the Onslow County Sheriff's Office. The trial court allowed Defendant's motion to suppress recorded statements of a conversation between Defendant and his sister in an interview room. On 8 May 2023, the trial court entered a written order with findings and conclusions on Defendant's motions to suppress.

The evidence from the suppression hearing tends to show the following. On 19 October 2017, the Jacksonville Police Department responded to a call from Guerrilla Armament, a gun shop, regarding a suspicious transaction potentially involving a stolen gun. The police ran the serial numbers, found that one of the guns—a Glock 26 pistol—was stolen, and launched an investigation to locate Defendant, who sold it to Guerrilla Armament. The police were able to identify Defendant's name through the phone number that he used to contact Guerrilla Armament.

The following day, on 20 October 2017, the gun shop provided the police with a description of Defendant and photographs of Defendant's Cadillac and license plate. Officers determined the license plate was fictitious. Later that day, Lieutenant Porter received a call from a fellow detective regarding a red Cadillac matching the description of Defendant's vehicle at an apartment complex. Lieutenant Porter proceeded to the location and surveilled the car, confirmed it was Defendant's car from the photographs, and later initiated a traffic stop based on displaying the fictitious plate.

Inside the Cadillac, Lieutenant Porter discovered Defendant, three other males, and a 14-year-old female, Q.M.[1] A large quantity of drugs was found in the vehicle. Officers arrested and transported Defendant to the Jacksonville Police Department as a suspect in the stolen firearm investigation. Lieutenant Porter placed Defendant in an interview room, read him his *Miranda* rights from a *Miranda* warning form, and had Defendant sign the form.

While investigating the stolen firearm, Lieutenant Porter retrieved Defendant's phone at Defendant's request to support his claim of lack of knowledge about the stolen firearm. Lieutenant Porter noticed the lock screen of Defendant's phone was a photo of Q.M., who was found in the red Cadillac during Defendant's arrest. After consulting with other detectives, he confirmed Q.M.'s name and learned that she was a passenger in a recent car chase with Defendant.

After Lieutenant Porter examined Defendant's text messages exchanged with "yay fein," the individual who supplied him with the gun, Porter requested consent from Defendant to search the phone. Lieutenant Porter informed Defendant that his phone would not be immediately returned without consenting to a search of its contents, or else the police would obtain a search warrant. Defendant signed the consent to search form, which stated the search may extend to any illegal activity

---

[1] A pseudonym used to protect the identity of the juvenile.

found on the phone. Captain Kellum downloaded the contents of Defendant's phone using Cellebrite software and examined its contents.

Lieutenant Porter observed text messages between Defendant and Q.M. that were romantic in nature and saw a thumbnail image of a video depicting Q.M. performing fellatio on a man. Lieutenant Porter informed the Special Victims Unit and the on-call Criminal Investigation Division detective, Vincent Waddell, about the findings from Defendant's phone. Detective Waddell arrived to interview Defendant about the contents of his phone. Before speaking with Defendant, Detective Waddell confirmed with Lieutenant Porter that Defendant had been advised of and waived his *Miranda* rights.

Upon entering the interview room, Detective Waddell verified with Defendant that he had given consent to search his phone and then began questioning him about specific information relating to Q.M. Defendant identified Q.M. as the female in the videos. After Detective Waddell interviewed Defendant, he allowed Defendant to leave.

On 27 February 2018, Defendant voluntarily met with Detective Johnston, with the Onslow County Sheriff's Office, at a Dunkin' Donuts in Jacksonville. During this meeting, Defendant and Detective Johnston discussed Defendant's relationship with Q.M. After inconsistencies emerged in Defendant's story, Detective Johnston ultimately informed Defendant he was under arrest, again advised him of his

*Miranda* rights, and transported him to an interview room at the Onslow County Sheriff's Office.

Inside the interview room, officers permitted Defendant to use his cell phone. In the presence of Detective Johnston, Defendant made several calls during which he made incriminating statements about his relationship with Q.M., including that he "got with" an underage girl. Defendant later made incriminating statements to his sister in the interview room in Detective Johnston's presence. Defendant's sister then asked to speak with her brother privately, and Detective Johnston left the room, stating that the conversation would be "as private as I can make it." Defendant made additional incriminating statements during this recorded conversation with his sister.

The matter came on for trial on 13 March 2023 in Onslow County Superior Court. At the outset, the trial court heard and ruled on Defendant's pretrial motions. Following the denial of his motions, pursuant to a plea agreement with the State, Defendant pled guilty to the remaining charges. During his plea colloquy, the trial court stated that, in pleading guilty, "you are, this is very important to you, you are preserving the right to appeal the [c]ourt's denial of your pretrial motions. The ones that the [c]ourt denied. I did allow one of them."

The trial court sentenced Defendant to mitigated sentences of: a minimum term of 204 months and the corresponding maximum term of 305 months of imprisonment for the statutory rape and statutory sex offense charges; a minimum

term of 60 months with a corresponding maximum term of 132 months for the sexual exploitation charges; and a minimum term of five months with a corresponding maximum term of 15 months for the obstruction of justice charges. Additionally, the trial court ordered Defendant to register as a sex offender for a period of 30 years. Defendant gave oral notice of appeal in open court.

## II.    Jurisdiction

"In North Carolina, a defendant's right to appeal in a criminal proceeding is purely a creation of state statute." *State v. Smith*, 193 N.C. App. 739, 741, 668 S.E.2d 612, 613 (2008). Section 15A-1444(e) provides, "[e]xcept as provided in subsections (a1) and (a2) of this section and [N.C. Gen. Stat §] 15A-979, and except when a motion to withdraw a plea of guilty or no contest has been denied, the defendant is not entitled to appellate review as a matter of right when he has entered a plea of guilty or no contest to a criminal charge in the superior court, but he may petition the appellate division for review by writ of certiorari." N.C. Gen. Stat. § 15A-1444(e) (2023). "Notwithstanding these statutory guidelines, however, our Supreme Court has held that when a trial court improperly accepts a guilty plea, the defendant may obtain appellate review of this issue only upon *grant* of a writ of certiorari." *State v. Demaio*, 216 N.C. App. 558, 562, 716 S.E.2d 863, 866 (2011) (emphasis added) (quoting *State v. Bolinger*, 320 N.C. 596, 601, 359 S.E.2d 459, 462 (1987)). A PWC is a "prerogative writ[ ]" which we may issue to aid our jurisdiction. *See* N.C. Gen. Stat. § 7A-32(c) (2023).

Here, Defendant filed a PWC contemporaneously with his brief. Since this Court's holding in *Demaio*, our Supreme Court has both dispensed with the fiction that Rule of Appellate Procedure 21 imposes any jurisdictional limits on the General Assembly's grant of authority in our appellate courts to issue writs of certiorari, *State v. Killette*, 381 N.C. 686, 691, 873 S.E.2d 317, 320 (2022); *see* N.C. Gen. Stat. § 7A-32(c), and articulated a two-factor test which provides a mandatory framework for how and when to properly exercise our discretion to issue writs of certiorari, *Cryan v. Nat'l Council of YMCAs*, 384 N.C. 569, 572–73, 887 S.E.2d 848, 851 (2023). To harmonize *Demaio* with recent developments in our common law, we examine Defendant's contention that his guilty plea was not the product of a knowing, voluntary, and informed choice under the *Cryan* test. *See id.* at 572–73, 887 S.E.2d at 851.

First, the appellant must show "merit or that error was probably committed below." *Id.* at 572, 887 S.E.2d at 851. This factor weighs the likelihood that an error of law occurred below. *Id.* at 572, 862 S.E.2d at 851 (citing *Button v. Level Four Orthotics & Prosthetics, Inc.*, 380 N.C. 459, 465–66, 869 S.E.2d 257, 264 (2022)). Next, "extraordinary circumstances" warranting issuance of the PWC must exist. *Id.* at 572–73, 887 S.E.2d at 851. An extraordinary circumstance "generally requires a showing of substantial harm, considerable waste of judicial resources, or 'wide-reaching issues of justice.'" *Id.* at 573, 887 S.E.2d at 851 (quoting *Doe v. City of Charlotte*, 273 N.C. App. 10, 23, 848 S.E.2d 1, 11 (2020)).

In his PWC, Defendant maintains the writ should issue to determine whether his guilty plea was knowingly, intelligently, and voluntarily made. Specifically, Defendant argues that his plea was not knowing, intelligent, and voluntary because "he pled guilty on the explicit assurance that he was reserving his right to appeal the denial of pretrial motions – some of which were not appealable." After careful review, we conclude Defendant's PWC fails to demonstrate that an error of law was probably committed below.

> [A] plea of guilty . . . may not be considered valid unless it appears affirmatively that it was entered voluntarily and understandingly. Hence, a plea of guilty . . . unaccompanied by evidence that the plea was entered voluntarily and understandingly, and a judgment entered thereon, must be vacated . . . . If the plea is sustained, it must appear affirmatively that it was entered voluntarily and understandingly . . . [and that] the nature and consequences of the plea [had] been explained to defendant *in open court*.

*State v. Tinney*, 229 N.C. App. 616, 621, 748 S.E.2d 730, 734 (2013) (emphasis in original) (quoting *State v. Ford*, 281 N.C. 62, 67–68, 187 S.E.2d 741, 745 (1972)).

Generally, "[a] defendant who pleads guilty is entitled to receive the benefit of his bargain." *Demaio*, 216 N.C. App. at 564, 716 S.E.2d at 867 (citation omitted). In *Demaio*, we held that, "[i]f a defendant does not have an appeal as of right . . . on issues the defendant was promised would be preserved for appeal, then the plea agreement violates the law." *Id.* at 565, 716 S.E.2d at 867. In this situation, "the appellate court must place the defendant back in the position he was in before he struck his bargain." *Id.* at 565, 716 S.E.2d at 867 (internal quotation marks and

citation omitted). This would require vacating the judgment and remanding "the case to the trial court where defendant may withdraw his guilty plea and proceed to trial on the criminal charges or withdraw his plea and attempt to negotiate another plea agreement that does not violate State law." *Id.* at 565, 716 S.E.2d at 867–68.

On the other hand, in *Tinney*, this Court noted the facts presented were "[u]nlike the situation present in *Demaio* and a number of other cases in which this Court has determined that the inclusion of an invalid provision reserving the right to obtain appellate review of a particular issue had the effect of rendering a plea agreement unenforceable." 229 N.C. App. at 622, 748 S.E.2d at 735. We distinguished *Demaio*, where "the defendant was never advised that the 'preservation of rights' provision in his plea agreement was invalid," reasoning that in *Tinney*,

> the trial court interrupted the taking of [the] [d]efendant's plea, examined the issue of whether a defendant could seek appellate review of the lawfulness of an order transferring a case from the juvenile courts to the Superior Court under such circumstances, and specifically informed [the] [d]efendant that there was a 'good chance, though I can't speak for the Court of Appeals, that the decision by [the trial court judge regarding the transfer order] is not reviewable and—by a later court. And I want to make sure you've had a chance to talk with him about that and [the defendant] understands it.'

*Id.* at 625, 748 S.E.2d at 736.

In *Tinney*, "[b]oth the prosecutor and the trial court cited the controlling decision of this Court and clearly informed [the] [d]efendant that the likelihood that he would be able to obtain appellate review of the transfer order was extremely low."

*Id.* at 625, 748 S.E.2d at 737. Unlike *Demaio*, the defendant in *Tinney* "had ample notice that the provision in his plea agreement reserving his right to challenge the validity of the transfer order on appeal was, in all probability, unenforceable and elected to proceed with his guilty plea in spite of the fact that he knew that the provision in question was of questionable validity." *Id.* at 622, 748 S.E.2d at 735. This Court concluded that, in "light of the steps taken by the trial court to advise [the] [d]efendant of the likelihood that his attempt to reserve his right to seek appellate review of the transfer order would prove unsuccessful," the defendant was "not entitled to relief from the trial court's judgment on the basis of the principle enunciated in *Demaio*." *Id.* at 622, 748 S.E.2d at 735.

Here, at first glance, the portions of transcript found in Defendant's PWC appear to show merit. Indeed, the transcript of plea form clearly indicates Defendant "preserves his right to appeal the denial of all pretrial motions." Several of Defendant's pretrial motions were not appealable. Nevertheless, consistent with *Tinney*, we examine the form alongside Defendant's colloquy with the trial court to contextualize whether it affirmatively appears that Defendant's plea "was entered voluntarily and understandingly" and whether "the nature and consequences of the plea [were] explained to [D]efendant *in open court*." *See Tinney*, 229 N.C. App. at 621, 748 S.E.2d at 734 (emphasis in original) (citing *Ford*, 281 N.C. at 67–68, 187 S.E.2d at 745).

Evidently, Defendant educated himself on certain principles of criminal law and took an active role in his own defense, including the filing of a pretrial pro se motion to suppress. On 16 March 2023, after an extended colloquy concerning Defendant's opinion of defense counsel and the inherent risks of Defendant proceeding to trial pro se, Defendant and the State reached a last-minute plea agreement. The conversation unfolded, in relevant part:

> THE COURT: Counsel, I understand that you, [defense counsel], need to speak with your client a little further concerning a possibility of a resolution in the case by possible plea. Does anyone have an objection if I have the bailiff releases the jury and have them return at 11:30?
> [PROSECUTOR]: No, Judge.
> THE COURT: Mr. Sheriff, without any comment release the jury until 11:30. We will be at ease until 11:30.
> (The Court was at ease at 10:47 a.m. and resumed at 11:28 a.m.)
> [DEFENSE COUNSEL]: Judge, may I approach?
> THE COURT: Yes, sir, Counsel. I know that there is a statute that specifically authorizes a defendant to plead guilty and to reserve his right to appeal the motions to suppress. I can't find it. Do either of you know the statutes?
> [DEFENSE COUNSEL]: I don't, Judge.
> THE COURT: Do you remember, [prosecutor]?
> [PROSECUTOR]: I don't, Judge.
> THE COURT: I'm trying to find it.
> [PROSECUTOR]: I believe it is 15A-979 subsection b.
> THE COURT: That is correct. Thank you very much. I understand, [defense counsel], your client wishes to withdraw his plea of not guilty and plead guilty pursuant to this plea transcript?
> [DEFENSE COUNSEL]: Yes, Your Honor.
> THE CLERK: If you will raise your right hand and place your left hand on the bible. Do you swear or affirm to truthfully answer the questions about to be propounded to you by his honor concerning the matter now before the

Court so help you God?

DEFENDANT: Yes, ma'am.

THE COURT: [Defendant], let's go over this transcript of plea. If at any time you don't understand these questions or need to further talk with your lawyer let me know.

. . .

[Defendant], are you able to hear and understand me?

DEFENDANT: Yes, sir.

THE COURT: Do you understand that you have the right to remain silent and that any statement you make may be used against you?

DEFENDANT: Yes, sir.

. . .

THE COURT: Have the charges been explained to you by your lawyer, and do you understand the nature of the charges, and do you understand every element of each charge?

DEFENDANT: Yes, sir.

THE COURT: Have you and your lawyer discussed the possible defenses, if any, to the charges?

DEFENDANT: Yes, sir.

THE COURT: At this time, sir, are you satisfied with [defense counsel's] legal services?

DEFENDANT: Yes, sir.

THE COURT: Do you understand that you do have the right to plead not guilty and have your case tried before a jury that has been selected in this case?

DEFENDANT: Yes, sir.

THE COURT: Do you understand that at such trial you would have the right to confront and cross-examine the witnesses against you?

DEFENDANT: Yes, sir.

THE COURT: Do you understand by your pleas of guilty you're giving up those and other important constitutional rights relating to a trial by jury?

DEFENDANT: Yes, sir.

. . .

THE COURT: All right. *Do you understand that following a plea of guilty there are limitations on your right to appeal*?

DEFENDANT: Limitations?

THE COURT: There will be limitations on your right to

appeal. *You will have the right to appeal the Court's denial of your motion to suppress* and we will talk about that in a few minutes. Do you understand that?
DEFENDANT: Yes, sir.
THE COURT: *You may not appeal the plea of guilty or the sentence, but you may appeal and I expect based on what your lawyer has told me you probably will appeal, the denial of the motions to suppress; is that correct*?
DEFENDANT: Yes, sir.

(emphasis added). On appeal, Defendant conveniently disregards the above exchange, instead fixating on the following exchange with the trial court, which occurred moments later.

> THE COURT: All right. The sentences imposed today will be in the discretion of the Court after hearing the evidence from the State, and any evidence your lawyer wishes to present in mitigation, either immediately after the adjudication or sometime today. You will receive credit -- this is not in the transcript, but you will receive credit against the sentences imposed for any time spent in confinement awaiting trial. *And you are, this is very important to you, you are preserving your right to appeal the Court's denial of your pretrial motions. The ones that the Court denied. I did allow one of them.* Is that correct as being your full plea agreement?
> THE DEFENDANT: Yes, sir. Can I ask a question?
> THE COURT: Yes, sir.
> THE DEFENDANT: I didn't see that part on the paper that I will appeal the motion. And then when you sign it, I just ask you before I leave that I can get a copy so I can take it with me.
> THE COURT: We will make sure you get a copy of it. Yes, sir. I will -- assuming that you do give notice of appeal in open court after you are sentenced, we will make sure that the appellate entries are entered and if you want counsel, I will appoint counsel for you. It will be someone other than [defense counsel]. It will be the [P]ublic Defender's office. Any questions about that?

THE DEFENDANT: No, sir.
THE COURT: Okay. Do you now personally accept this arrangement?
THE DEFENDANT: Yes, sir.
. . .
THE COURT: You enter this plea of your own free will fully understanding what you're doing?
THE DEFENDANT: Yes, sir.
. . .
THE COURT: All right. At this point do you have any other questions about anything I've said to you or about anything else connected to your case?
THE DEFENDANT: No, sir.

(emphasis added).

Contrary to Defendant's assertions, when considered in context, the trial court's statements in the second exchange provide additional support for our reading of the first exchange. Specifically, the trial court's statement, "I did allow one of them," clearly refers to the one favorable ruling Defendant received on his motions to suppress—the suppression of Defendant's conversation with his sister recorded in the interview room. In light of the foregoing, Defendant cannot show that he failed to receive the benefit of his bargain or that his plea was not knowingly, voluntarily, and intelligently made. Conversely, the record reveals Defendant's plea "was entered knowingly, voluntarily, and understandingly" and "the nature and consequences of the plea [were] explained to [D]efendant *in open court.*" *See Tinney*, 229 N.C. App. at 620–21, 748 S.E.2d at 734.

Because Defendant cannot establish merit or probable error below, we deny his PWC in our sound discretion. *See Cryan*, 384 N.C. at 573, 887 S.E.2d at 851

(citing *Ricks*, 378 N.C. at 740, 862 S.E.2d at 838). Nevertheless, as recognized by the trial court, prosecutor, and defense counsel, we have jurisdiction to review the denials of Defendant's motions to suppress. *See* N.C. Gen. Stat. § 15A-979(b) (2023).

### III. Issue

The issue is whether the trial court erred in denying Defendant's motions to suppress.

### IV. Analysis

Defendant appeals from the trial court's denial of his motions to suppress, arguing his consent to the search of his phone was invalid because: (1) his consent was given during unlawful detention where probable cause no longer existed; and (2) his consent was obtained through coercion. We disagree with Defendant.

#### A. Preservation

Before addressing the motion to suppress evidence from his cell phone's search, we must first determine if Defendant properly preserved his right to appeal the motions to suppress on probable cause grounds. The State argues that Defendant did not raise the lack of probable cause argument below and therefore Defendant did not preserve the argument for appeal. We disagree with the State.

We have consistently held that "where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts." *State v. Walker*, 252 N.C. App. 409, 411, 798 S.E.2d 529, 530 (2017) (quoting *State v. Holliman*, 155 N.C.

App. 120, 123, 573 S.E.2d 682, 685 (2002)). The "swapping horses" rule applies where issues on appeal are "grounded on separate and distinct legal theories than those relied upon at the trial court, or when a sufficiency of the evidence challenge on appeal concerns a conviction different from a charge challenged before the trial court." *See id.* at 411, 798 S.E.2d at 530 (citing *Holliman*, 155 N.C. App. at 123–24, 573 S.E.2d at 685–86 (rejecting the defendant's motion to suppress argument on appeal for lack of probable cause when, at the hearing, he only argued coercion)).

Here, we conclude that Defendant's argument regarding the lack of probable cause for his continued detention does not amount to "swapping horses." *See id.* at 411, 798 S.E.2d at 530. The alleged illegality of Defendant's detention after the gun investigation concluded was a recurring source of pretrial discussion. Defendant's motions to suppress sufficiently referenced search and seizure caselaw, including the topic of probable cause. Therefore, probable cause cannot be said to be a "separate and distinct" legal theory from those relied upon below. *See id.* at 411, 798 S.E.2d at 530.

## B. Standard of Review

This Court reviews a trial court's denial of a motion to suppress by determining whether "the trial court's findings are supported by the evidence and whether the findings of fact support the conclusions of law." *State v. Byrd*, 287 N.C. App. 276, 279, 882 S.E.2d 438, 440 (2022) (quoting *State v. Wiles*, 270 N.C. App. 592, 595, 841 S.E.2d 321, 325 (2020)). "In reviewing the denial of a motion to suppress, we examine

the evidence introduced at trial in the light most favorable to the State[.]" *State v. Duncan*, 272 N.C. App. 341, 345, 846 S.E.2d 315, 320 (2020) (alteration in original) (quoting S*tate v. Moore*, 152 N.C. App. 156, 159, 566 S.E.2d 713, 715 (2002)).

Unchallenged findings of fact are binding on appeal. *State v. Fizovic*, 240 N.C. App. 448, 451, 770 S.E.2d 717, 720 (2015) (citing *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)). The trial court's conclusions of law are reviewed de novo. *Byrd*, 287 N.C. at 279, 882 S.E.2d at 440 (citing *State v. Wiles*, 270 N.C. App. 592, 595, 841 S.E.2d 321, 325 (2020)). Under a de novo review, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

**C. Motions to Suppress**

Under the United States Constitution, the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . . " *State v. Logan*, 278 N.C. App. 319, 323–24, 861 S.E.2d 908, 912 (2021) (quoting U.S. Const. amend. IV). Likewise, Article I, Section 20 of the North Carolina Constitution prohibits unreasonable searches and seizures, requiring that warrants be issued only upon probable cause. *See State v. Allman*, 369 N.C. 292, 293, 794 S.E.2d 301, 302–03 (2016) (citing *State v. Arrington*, 311 N.C. 633, 643, 319 S.E.2d 254, 260–61 (1984)); N.C. Const. art. I, § 20.

"In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 573 U.S. 373, 382, 134 S. Ct. 2473, 2482, 189 L. Ed. 2d 430 (2014). This Court "recognizes consent searches as an exception to the general warrant requirement." *State v. Duran-Rivas*, 294 N.C. App. 603, 611, 904 S.E.2d 171, 178 (2024) (quoting *State v. Hagin*, 203 N.C. App. 561, 564, 691 S.E.2d 429, 432 (2010)). "Where 'consent to search . . . was the product of an unconstitutional seizure,' it is involuntary." *State v. Johnson*, 279 N.C. App. 475, 484, 865 S.E.2d 673, 680 (2021) (quoting *State v. Cottrell*, 234 N.C. App. 736, 752, 760 S.E.2d 274, 285 (2014)).

A seizure of a person is reasonable if the seizing officer has probable cause to believe the person seized committed a crime. *See U.S. v. Watson*, 423 U.S. 411, 423–24, 96 S. Ct. 820, 827–28, 46 L. Ed. 2d 598, 608–09 (1976). Similarly, an object is subject to a seizure pursuant to a search warrant if there is "probable cause to believe that the item to be seized constitutes evidence of an offense or the identity of a person who participated in the crime." *State v. Carter*, 322 N.C. 709, 723, 370 S.E.2d 553, 561 (1988) (citing N.C. Gen. Stat. § 15A-242(4)).

"Probable cause is 'a suspicion produced by such facts as indicate a fair probability that the person seized has engaged in or is engaged in criminal activity.'" *State v. Wilson*, 155 N.C. App. 89, 94, 574 S.E.2d 93, 97–98 (2002) (quoting *State v. Schiffer*, 132 N.C. App. 22, 26, 510 S.E.2d 165, 167 (1999)). Probable cause equates to a "reasonable ground of suspicion," supported by circumstances

strong enough to warrant a cautious man to believe the accused person is guilty. *See State v. Harris*, 279 N.C. 307, 311, 182 S.E.2d 364, 367 (1971). Such suspicion is determined by "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 311, 182 S.E.2d at 367 (citation omitted). Probable cause requires our courts to "make a practical, common-sense decision based on the totality of the circumstances, whether there is a fair probability that evidence will be found in the place to be searched." *Byrd*, 287 N.C. App. at 279–80, 882 S.E.2d at 441 (quoting *State v. Worley*, 254 N.C. App. 572, 576, 803 S.E.2d 412, 416 (2017)).

A seizure occurs when an officer "terminates or restrains" a person's movement through "physical force or a show of authority." *State v. Isenhour*, 194 N.C. App. 539, 542, 670 S.E.2d 264, 267 (2008) (quoting *Brendlin v. California*, 551 U.S. 249, 254, 127 S. Ct. 2400, 2405, 168 L. Ed. 2d 132, 138 (2007)). In other words, a seizure means "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 543, 670 S.E.2d at 267 (quoting *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497, 509 (1980)). This objective inquiry considers whether physical or psychological barriers erected by law enforcement would cause a reasonable person to believe he was not free to leave. *Id.* at 543, 670 S.E.2d at 268 (citing *State v. Christie*, 96 N.C. App. 178, 184, 385 S.E.2d 181, 184 (1989)).

Here, Defendant first contends that his continued detention was unlawful. He argues that Lieutenant Porter did not have enough evidence to charge him with knowing the gun was stolen after reviewing the texts with "yay fein." Therefore, he maintains that any subsequent detention was illegal, rendering his consent invalid. Defendant's argument is without merit.

The State developed reasonable suspicion or probable cause of multiple crimes at different points in the investigation, justifying Defendant's continued detention. After the traffic stop, Lieutenant Porter had probable cause of gun and drug charges sufficient to arrest Defendant and transport him to the police department for interrogation. During the interrogation, Lieutenant Porter could have charged Defendant with possession of a stolen gun at any point. Defendant incorrectly asserts that Lieutenant Porter had no remaining suspicions about Defendant's gun case after reviewing Defendant's text messages with "yay fein." Rather, Lieutenant Porter still "needed to do some work" to "quell [his] suspicion about [Defendant's] involvement in the gun trade," indicating that probable cause concerning weapons charges had not fully dissipated.

When Lieutenant Porter retrieved Defendant's phone and observed the lock screen, he thought it was "odd" to see an image of a young girl he recognized. After consulting with other detectives, Lieutenant Porter confirmed Q.M.'s identity and presence in the same car during a recent car chase. This information, coupled with the fact that Lieutenant Porter's phone has a "picture of a Chevy because [he] love[s]

[his] Chevy truck" and most of his "friends' lock screens are pictures of their wives and kids because they love their wife and kids" led him to develop reasonable suspicion and detain Defendant for further investigation. *See Harris*, 279 N.C. at 311, 182 S.E.2d at 367.

Lieutenant Porter also had probable cause to seize the phone concerning the gun charges, given the significant role it played during the investigation. Defendant was initially identified as the suspect in the gun case through his phone number and later voluntarily handed over his phone, seeking to prove his lack of culpability as to the stolen gun by showing his text messages with "yay fein." These factors contributed to the likelihood that Defendant's phone contained additional evidence related to the gun case. Because Defendant was neither unconstitutionally seized nor illegally detained when he consented to the search of his phone, Defendant cannot establish that his consent was involuntary. *See Johnson*, 279 N.C. App. at 484, 865 S.E.2d at 680.

Defendant next argues that his consent to search his phone was coerced because, even though he was free to leave, officers "held [the] phone hostage" by threatening to obtain a warrant. We disagree.

Lawful consent is an exception to the warrant requirement. *See State v. Kuegel*, 195 N.C. App. 310, 315, 672 S.E.2d 97, 100 (2009) (quoting *State v. Smith*, 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997)). Warrantless searches based on consent are constitutional "as long as the consent is given freely and voluntarily,

without coercion, duress or fraud." *State v. Cummings*, 188 N.C. App. 598, 603, 656 S.E.2d 329, 333 (2008) (quoting *State v. Powell*, 297 N.C. 419, 425–26, 255 S.E.2d 154, 158 (1979)). The determination of whether consent to search was voluntary is made upon the totality of the circumstances. *Id.* at 603, 656 S.E.2d at 333; *see State v. Hernandez*, 170 N.C. App. 299, 310, 612 S.E.2d 420, 427 (2005).

Although not favored, "[t]he use of false statements and trickery by police officers during interrogations is not illegal as a matter of law." *See State v. Barnes*, 154 N.C. App. 111, 114, 572 S.E.2d 165, 167–68 (2002) (quoting *State v. Jackson*, 308 N.C. 549, 574, 304 S.E.2d 134, 148 (1983)). "As a general rule, it is not duress to threaten to do what one has a legal right to do. Nor is it duress to threaten to take any measure authorized by law and the circumstances of the case." *State v. McMillan*, 214 N.C. App. 320, 331, 718 S.E.2d 640, 648 (2011) (quoting *State v. Paschal*, 35 N.C. App. 239, 241, 241 S.E.2d 92, 94 (1978)); *see also Kuegel*, 195 N.C. App. at 316, 672 S.E.2d at 101 (finding no coercion where the defendant was told that if he did not grant consent, the officers would obtain a search warrant).

Defendant's contention his consent was coerced merely because his phone was his only means of leaving the station is unavailing. Unlike a valid driver's license, which is necessary to lawfully drive a car, Defendant was under no obligation to carry a cell phone. *See State v. Thompson*, 267 N.C. App. 101, 104, 832 S.E.2d 510, 512 (2019). Further, officers had a lawful right to seek a search warrant for the phone if Defendant refused to consent, which, under the facts of this case, was not coercive.

Simply put, Defendant did not *want* to leave the police station without his cell phone, which is understandable. The law, however, distinguishes between subjectively not wanting to leave and objectively not being free to leave. *See State v. Isenhour*, 194 N.C. App. at 543, 670 S.E.2d at 268; *State v. Hall*, 268 N.C. App. 425, 430, 836 S.E.2d 670, 674 (2019) ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness.") (quoting *State v. Romano*, 369 N.C. 678, 691, 800 S.E.2d 644, 652 (2017)). Thus, Defendant cannot assert that his ability to leave the police station was unreasonably restricted solely due to officers' retention of his phone.

Accordingly, under the totality of the circumstances, Defendant's consent to the search of his phone was voluntary and without illegal duress or coercion. Defendant's attempts to challenge the lawfulness of his consent to search his phone are without merit.

## V. Conclusion

In sum, we deny Defendant's PWC and affirm the trial court's denial of Defendant's motions to suppress.

AFFIRMED.

Judges TYSON and STADING concur.